# United States Court of Appeals
## For the First Circuit

No. 12-1499

UNITED STATES OF AMERICA,

Appellee,

v.

WAYNE CARTER,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Dyk[*] and Thompson,
Circuit Judges.

J. Hilary Billings, Assistant Federal Defender, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, were on brief for
appellee.

April 30, 2014

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA, Circuit Judge.** This criminal case comes to us on direct appeal from a final judgment entered against Defendant-Appellant Wayne Carter ("Carter") by the United States District Court for the District of Maine. Carter was charged in a one-count indictment with possessing a firearm following a prior conviction of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a). After Carter conditionally pleaded guilty and reserved his right to appeal, the district court sentenced him to be imprisoned for twelve months and one day. The execution of his sentence was stayed pending the resolution of this appeal.

Carter raises three claims on appeal. First, he raises a constitutional challenge, arguing that under the Supreme Court's decision in District of Columbia v. Heller, 554 U.S. 570 (2008), the government failed to demonstrate a "reasonably close fit" between the purpose of the restriction (reducing the frequency of deaths resulting from domestic violence) and the restriction itself (in his words, "permanently dispossessing non-violent domestic misdemeanants of their Second Amendment rights").

Second, he brings a statutory claim, arguing that commission of simple assault by recklessly causing offensive physical contact does not constitute the "use or attempted use of physical force" as required to qualify as a "misdemeanor crime of

-2-

domestic violence," and thus his prior conviction cannot serve as a valid predicate offense for purposes of § 922(g)(9).

Third, Carter argues that under an exception to the relevant sentencing guideline, he was entitled to a lesser sentence because he possessed the firearm "solely for lawful sporting purposes or collection." See United States Sentencing Commission, Guidelines Manual, § 2K2.1(b)(2) (Nov. 2011) ("USSG").

We hold that Carter's constitutional claim is foreclosed by binding precedent to the contrary, but that there may be some merit to his statutory argument in light of the Supreme Court's recent decision in United States v. Castleman, 134 S. Ct. 1405 (2014). Finding that the record is insufficiently developed on this issue, we vacate Carter's conviction and the district court's denial of his original motion to dismiss the indictment, and we remand the case for further proceedings consistent with this opinion. Accordingly, we do not reach Carter's arguments regarding the application of the relevant sentencing guidelines.

## I. **Background**

### A. **Factual Background**

On March 20, 2010, Carter pawned a rifle at the Waldoboro Trading Post in Waldoboro, Maine in exchange for a loan. After repaying the loan, he attempted to collect the rifle on April 16, 2010. In order to retake possession, he completed a records check form required by the Bureau of Alcohol, Tobacco, Firearms, and

-3-

Explosives ("ATF").  The return of the rifle was denied due to the results of the records check, which indicated that Carter had prior criminal convictions.[1]

Further investigation revealed, among other things, that in 1997 Carter had been convicted of a misdemeanor assault in Maine.  Police records of the offense showed that on February 24, 1997, a police officer was called to Carter's home, where he lived with his girlfriend, Annie Eagan ("Eagan"), and her two children (at the time, one daughter was ten years old and the other daughter was four months old).  Eagan told the officer that Carter had spit in her face and shoved her on her right shoulder; her account was corroborated by her ten-year-old daughter.  Eagan said that she was not hurt, did not want Carter arrested, and did not want to press charges; she only wanted him removed from the house.  According to the police report, Eagan recounted that Carter had struck her before "here and there."  The responding officer noted that this was the second time that she was called to the home to have Carter removed.

---

[1] The presentence investigation report ("PSR") and revised PSR prepared by the U.S. Probation Officer later cited twenty-two adult criminal convictions, beginning when Carter was 18 years old in 1984 and extending through the age of 45 at the time the report was prepared in 2010.  These included convictions for: disorderly conduct, criminal mischief, assaults, violating protective orders, probation violations, theft, operating under the influence, driving to endanger, indecent conduct, marijuana possession, and unlawful drug trafficking.

In an Information dated April 1, 1997, the Maine state prosecutor charged that "Wayne Carter did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Angie Eagan," in violation of the Maine general-purpose assault statute. See Me. Rev. Stat. tit. 17-A, § 207. Carter pleaded guilty in Knox County Superior Court in Rockland, Maine, and the court adjudged him guilty as charged and convicted. The court sentenced him to serve thirty days in the Knox County Jail.

On April 30, 2010, ATF agents went to Carter's home, where they interviewed him regarding his attempt to collect the pawned firearm. Carter admitted that he recalled his previous conviction for assaulting Eagan.

As the investigation continued, the pawn shop's records also revealed that Carter had pawned and redeemed three separate rifles on multiple occasions between 2007 and 2010. In total, he pawned a firearm ten times during this period.[2]

---

[2] The transaction that prompted this investigation involved a Ruger-brand "Mini-14 Ranch Rifle"; Carter pawned this rifle a total of five times between 2008 and 2010. Carter also pawned and redeemed a Remington-brand, "Model 700," .270 caliber rifle on three occasions between 2007 and 2009. Finally, Carter twice pawned and redeemed a Remington-brand, "Model 760 Gamemaster," .35 caliber rifle. Carter inherited the weapons following his father's death in 2006. The firearms were kept in a locked cabinet at his mother's house, and Carter only physically possessed the rifles in connection with pawning them. He had not hunted since 2000, and he did not discharge any of the firearms or engage in target shooting during his ownership of the rifles.

## B. Procedural Background

On September 22, 2010, in a one-count indictment, a grand jury charged Carter with the knowing possession of a firearm following a previous conviction of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a). Carter filed a motion to dismiss the indictment, arguing that the Maine assault statute is not adequate to constitute a predicate "misdemeanor crime of domestic violence" for purposes of § 922(g)(9). Carter recognized that then-current precedent was contrary to his position, but nonetheless stated that he wished to preserve his arguments on this point for purposes of appeal, citing his belief that "the law in the area is in considerable flux."

In a one-sentence order, the district court denied Carter's motion on the basis that United States v. Booker, 644 F.3d 12 (1st Cir. 2011), "serves as binding and controlling precedent for the issues presented in Defendant's Motion." Carter then entered a conditional guilty plea, reserving his right to appeal the district court's order on his motion to dismiss.

Subsequently, Carter filed a supplemental motion to dismiss the indictment, this time arguing that "Congress exceeded its authority in enacting [§ 922(g)(9)] in that it deprives an individual of a core right under the Second Amendment without sufficient justification to pass either strict scrutiny or even heightened scrutiny." The district court also denied that motion,

-6-

and Carter entered an amended conditional guilty plea, reserving the right to appeal from the court's denial of both of his motions to dismiss.[3]

In Carter's only objection at sentencing, he argued that he was entitled to a reduced sentencing range pursuant to the "sporting purposes or collection" exception under the United States Sentencing Guidelines.[4] The district court rejected this argument, finding that Carter failed to prove that he qualified for either prong of the exception. The court nonetheless varied from the bottom of the guidelines range -- eighteen months -- and sentenced Carter to a total term of imprisonment of twelve months and one day. Upon a motion by Carter, the court stayed the execution of the sentence pending resolution of this appeal.

---

[3] In his original appellate brief before us, Carter renewed both arguments he raised in his motions to dismiss the indictment. In his reply brief, however, Carter conceded that these two issues were foreclosed by our decision in United States v. Armstrong, 706 F.3d 1 (1st Cir. 2013), vacated, 82 U.S.L.W. 3566 (U.S. Mar. 31, 2014), but he sought to preserve his arguments for potential further appellate review. On March 31, 2014, the Supreme Court vacated our judgment in Armstrong and remanded the case to us for further reconsideration in light of Castleman, 134 S. Ct. 1405. See Armstrong, 82 U.S.L.W. 3566. Therefore, we must consider to what extent Castleman impacts Carter's first two claims, which were previously foreclosed by First Circuit precedent.

[4] That exception provides for a reduced sentencing range if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." USSG § 2K2.1(b)(2) (the "sporting purposes or collection" exception). If Carter had qualified for the exception, his Guidelines Sentencing Range would have been reduced from 18-24 months of imprisonment to 0-6 months.

## II. Discussion

### A. Second Amendment Claim

In Carter's first claim on appeal, he renews the constitutional argument he previously raised in his supplemental motion to dismiss the indictment. Carter argues that § 922(g)(9) "deprives a significant population of non-violent offenders from exercising a core constitutional right" protected by the Second Amendment. Relying on the Supreme Court's decision in Heller, 554 U.S. 570, he asserts that the Second Amendment "is an individual right which may not be abrogated by governmental fiat without compelling interests." Carter states that the government failed to establish any such basis here, and that given this lack of justification, § 922(g)(9) does not survive either strict scrutiny or heightened scrutiny.

Carter maintains that a restriction depriving competent non-felons of their Second Amendment rights must be narrowly tailored to a compelling governmental interest. He asserts that "[b]ecause there is no reliable information that misdemeanants are likely to misuse firearms at a rate any greater than those not convicted of such petty crimes, the law fails constitutional muster." In Carter's view, the government has not established a substantial connection between the harm sought to be avoided (a reduction in the number of deaths due to domestic violence) and the proscription enumerated in § 922(g)(9) (barring the possession of

-8-

firearms by persons previously convicted of a misdemeanor crime of domestic violence).  Therefore, Carter concludes that the statute is an unconstitutional infringement of a fundamental right.

Because Carter's claim raises a constitutional challenge to a federal statute, we review this Second Amendment claim de novo.  See Booker, 644 F.3d at 22.  Carter's constitutional claim remains squarely foreclosed by our opinion in Booker.  Id. at 25-26.  Like Carter, the defendants in Booker were both convicted under § 922(g)(9) following prior convictions under the Maine general-purpose assault statute, and both "argue[d] that § 922(g)(9) unconstitutionally abridges their Second Amendment right to bear arms." Id. at 13-15.

We resoundingly rejected this claim in Booker, reasoning that there cannot "be any question that there is a substantial relationship between § 922(g)(9)'s disqualification of domestic violence misdemeanants from gun ownership and the governmental interest in preventing gun violence in the home." Id. at 25.  We cited Justice Department statistics that support the Supreme Court's statement that "'[f]irearms and domestic strife are a potentially deadly combination nationwide.'"  Id. (observing that a firearm was used in approximately 65 percent of the 52,000 domestic murders between 1976 and 1996 (quoting United States v. Hayes, 555 U.S. 415, 427 (2009))).  Given that "research has found that '[t]he presence of a gun in the home of a convicted domestic

abuser is "strongly and independently associated with an increased risk of homicide,"'" id. at 26 (quoting United States v. Skoien, 614 F.3d 638, 643-44 (7th Cir. 2010)), we reasoned that "[i]t follows that removing guns from the home will materially alleviate the danger of intimate homicide by convicted abusers." Id. Therefore, we concluded that "it is plain that § 922(g)(9) substantially promotes an important government interest in preventing domestic gun violence." Id.

The appellant in Armstrong also brought a Second Amendment challenge to his § 922(g)(9) conviction, but sought to distinguish his case from Booker by characterizing his claim as an "as-applied" challenge. Armstrong, 706 F.3d at 7. We rejected Armstrong's claim for two reasons. First, we held that Armstrong's "as-applied" challenge necessarily failed because his case presented "the same kind of fact situation envisioned in Booker." Id. at 8. Second, we held that Armstrong's challenge failed "because a sufficient nexus exists here between the important government interest and the disqualification of domestic violence misdemeanants like [Armstrong]." Id.

The Supreme Court's vacation of our judgment in Armstrong for reconsideration in light of Castleman does nothing for Carter's argument on this issue. See Armstrong, 82 U.S.L.W. 3566. The defendant in Castleman did not challenge the constitutionality of § 922(g)(9), and the Supreme Court's opinion did not address the

Second Amendment or the constitutionality of the statute. <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1416. Therefore, <u>Castleman</u> does not impact our reasoning in <u>Armstrong</u> nor our holding in <u>Booker</u> with respect to the constitutionality of § 922(g)(9). As Carter has conceded, his Second Amendment claim remains foreclosed by binding precedent in this circuit. <u>See</u> <u>Booker</u>, 644 F.3d at 25-26.

**B. The Maine Assault Statute as a Predicate Crime of Conviction**

In Carter's second claim on appeal, he argues that the commission of a simple assault by recklessly causing offensive physical contact is inadequate to constitute a predicate conviction of a "misdemeanor crime of domestic violence" for purposes of 18 U.S.C. § 922(g)(9). Given that this issue depends upon the proper interpretation of the relevant statutory language, we review this question of law <u>de novo</u>. <u>See</u> <u>Booker</u>, 644 F.3d at 17. While the question whether Carter's earlier assault conviction constitutes a valid predicate offense under § 922(g)(9) is an issue of federal law, we are bound by the Maine Law Court's interpretation of Maine state law. <u>See</u> <u>Johnson</u> v. <u>United States</u>, 559 U.S. 133, 138 (2010).

**1. The Statutory Framework**

Carter was charged with -- and conditionally pleaded guilty to -- violating the Lautenberg Amendment to the Gun Control Act of 1968, 18 U.S.C. § 922(g)(9) (the "Lautenberg Amendment" or "§ 922(g)(9)"). Under the Lautenberg Amendment, it is unlawful for any person "who has been convicted in any court of a misdemeanor

-11-

crime of domestic violence, to . . . possess in or affecting commerce, any firearm or ammunition."  18 U.S.C. § 922(g)(9).  For these purposes, a "misdemeanor crime of domestic violence" is further defined in 18 U.S.C. § 921(a)(33)(A) as an offense that:

> (i) is a misdemeanor under Federal, State, or Tribal law; and
>
> (ii) <u>has, as an element, the use or attempted use of physical force</u>, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim[.]

18 U.S.C. § 921(a)(33)(A) (emphasis added).

Carter challenges whether the Maine assault statute "has, as an element, the use or attempted use of physical force."  <u>See</u> <u>id.</u>  Under the general-purpose assault provision in the Maine Criminal Code, a person is guilty of "assault" if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person."  <u>See</u> Me. Rev. Stat. tit. 17-A, § 207(1)(A).[5]  Carter conditionally pleaded guilty to

---

[5]  A defendant is further guilty of "domestic violence assault" if (1) the defendant violates the Maine simple assault provision, and (2) "the victim is a family or household member."  <u>See</u> Me. Rev. Stat. tit. 17-A, § 207-A(1)(A).  Violation of either provision -- general-purpose assault or "domestic violence assault" -- constitutes a "Class D" crime under the Maine Criminal Code, which is equivalent to a misdemeanor.  <u>See</u> <u>State</u> v. <u>Allen</u>, 377 A.2d 472, 475 (Me. 1977) ("We therefore deem Class D and Class E crimes to be the Criminal Code equivalents of misdemeanors.").  Carter's

-12-

this offense, as charged in his Information: "Wayne Carter did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Angie Eagan."[6]

## 2. Carter's Statutory Arguments

Carter levies three main arguments in support of his position that reckless offensive contact (as prohibited by the Maine assault statute) does not meet the definition of a "misdemeanor crime of domestic violence" involving "the use or attempted use of physical force" against a domestic partner. First, Carter argues that the "use or attempted use of physical force" language requires intentional, and not merely reckless, conduct. Second, even if non-violent reckless conduct is encompassed within the "use . . . of physical force" language, Carter maintains that the combination of this language with the "misdemeanor crime of domestic violence" language in § 922(g)(9) is ambiguous in light of the Supreme Court's decision in Johnson, 559 U.S. 133, and thus the rule of lenity requires that his prior Maine conviction cannot serve as a predicate offense.[7] Third, Carter

---

Information charged him with "assault" under § 207(1)(A), but not "domestic violence assault" under § 207-A(1)(A).

[6] As previously summarized, police reports indicated that these charges stemmed from a 1997 domestic incident in which Carter spit in Eagan's face and shoved her on her right shoulder. After the entry of his guilty plea, Carter was sentenced to serve thirty days in jail.

[7] On this point, we note that the Supreme Court expressly disavowed that its Johnson decision would control the

asserts that the canon of constitutional avoidance supports a reading of § 922(g)(9) and § 921(a)(33)(A) that reaches only those crimes that are committed through "intentionally violent conduct."[8]

On several occasions, we have rejected similar challenges to § 922(g)(9) convictions predicated upon prior convictions under the Maine general-purpose assault and "domestic violence assault" statutes. See Armstrong, 706 F.3d at 3-7 (rejecting defendant's claim that the Maine domestic violence assault statute could not serve as a predicate offense for § 922(g)(9)); Booker, 644 F.3d at 13-14, 21 (affirming convictions predicated upon Maine's general-purpose assault statute, and holding that "an offense with a mens rea of recklessness may qualify as a 'misdemeanor crime of domestic violence' under § 922(g)(9)"); United States v. Nason, 269 F.3d 10,

interpretation of the Lautenberg Amendment. See Johnson, 559 U.S. at 143-44 ("We have interpreted the phrase 'physical force' only in the context of a statutory definition of 'violent felony.' We do not decide that the phrase has the same meaning in the context of defining a misdemeanor crime of domestic violence. The issue is not before us, so we do not decide it."). Subsequently, considering the Lautenberg Amendment in Castleman, the Supreme Court explicitly rejected Castleman's rule-of-lenity argument regarding § 922(g)(9), reasoning that there is no "'grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended.'" Castleman, 134 S. Ct. at 1416 (quoting Barber v. Thomas, 560 U.S. 474, 488 (2010)).

[8] As explained in further detail herein, we have previously upheld the constitutionality of § 922(g)(9). See, e.g., Booker, 644 F.3d at 25-26. The Supreme Court's Castleman decision does not call into question this constitutional determination. Here, Carter raises his constitutional doubt argument in three paragraphs. As in Castleman, "the meaning of the statute is sufficiently clear that we need not indulge [Carter]'s cursory nod to constitutional avoidance concerns." See Castleman, 134 S. Ct. at 1416.

-14-

20-21 (1st Cir. 2001) (holding that both actus reus variants of the Maine assault statute -- bodily injury and offensive physical contact -- necessarily involve the use of physical force).  Thus, under our past precedent, all combinations of the actus reus and mens rea required by the Maine assault statute were sufficient to constitute the "use . . . of physical force" for purposes of serving as a predicate offense for a § 922(g)(9) conviction.  See Booker, 644 F.3d at 21; Nason, 269 F.3d at 20-21.

Indeed, Carter conceded in his reply brief that his arguments on this issue were foreclosed by then-binding precedent, including Armstrong, which at the time was our most recent decision affirming a § 922(g)(9) conviction predicated upon one of Maine's assault statutes.  See Armstrong, 706 F.3d at 2-7.  Our opinion in Armstrong, in turn, relied on our prior decisions in Booker, 644 F.3d 12, and Nason, 269 F.3d 10.  See Armstrong, 706 F.3d at 2.  However, because the Supreme Court recently vacated our judgment in Armstrong and remanded the case for reconsideration in light of its opinion in Castleman, 134 S. Ct. 1405, we must examine the impact of Castleman upon our precedent, as relevant to Carter's arguments.

### 3. The Supreme Court's Opinion in Castleman

The defendant in Castleman pleaded guilty, in a Tennessee court, to having "intentionally or knowingly cause[d] bodily injury to" the mother of his child.  Castleman, 134 S. Ct. at 1408, 1409. He was later indicted on two counts of violating § 922(g)(9), after

-15-

federal authorities learned that he was selling firearms on the black market.  Id. at 1409.  Castleman argued that the Tennessee statute did not "'ha[ve], as an element, the use . . . of physical force.'"  Id. (quoting 18 U.S.C. § 921(a)(33)(A)(ii)).  A divided Sixth Circuit panel affirmed the dismissal of Castleman's convictions on the § 922(g)(9) counts, holding that his Tennessee conviction was not a valid predicate offense for purposes of § 922(g)(9) because Castleman could have been convicted for "'caus[ing] a slight, nonserious physical injury with conduct that cannot be described as violent.'"  See id. at 1409-10 (quoting United States v. Castleman, 695 F.3d 582, 590 (6th Cir. 2012), rev'd and remanded, 134 S. Ct. 1405).

The Supreme Court granted certiorari to resolve a split of authority among the circuit courts of appeals.  See id. at 1410 (comparing our decision in Nason, 269 F.3d at 18, which found that § 922(g)(9) "encompass[es] crimes characterized by the application of any physical force," with United States v. Belless, 338 F.3d 1063, 1068 (9th Cir. 2003), which held that § 922(g)(9) covers only "the violent use of force").  Concluding that Castleman's state conviction qualified as a "misdemeanor crime of domestic violence," the Supreme Court reversed the Sixth Circuit's determination that the district court had properly dismissed Castleman's two § 922 (g)(9) counts.  Id. at 1410, 1415-16.

In interpreting the meaning of "physical force" for purposes of §§ 922(g)(9) and 921(a)(33)(A), the Supreme Court held that this language encompasses "the common-law meaning of 'force' -- namely, offensive touching." Id. at 1410. The Court explained that "'[d]omestic violence' is not merely a type of 'violence'; it is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context" -- acts such as slapping, shoving, pushing, grabbing, hair-pulling, and spitting. Id. at 1411 & n.5.

Furthermore, the Court observed that the assault or battery laws routinely used to prosecute domestic abusers, both at the time § 922(g)(9) was enacted and continuing through the present, "fall generally into two categories: those that prohibit both offensive touching and the causation of bodily injury, and those that prohibit only the latter." Id. at 1413. The Court reasoned that an interpretation of "force" under § 921(a)(33)(A) that excluded a mere "offensive touching" would have rendered the Lautenberg Amendment "ineffectual in at least 10 States -- home to nearly thirty percent of the Nation's population -- at the time of its enactment." Id. (footnote omitted). Concluding its interpretation of the meaning of "physical force" for purposes of § 922(g)(9), the Court held that this requirement is satisfied "by the degree of force that supports a common-law battery conviction" -- including an offensive touching. Id.

-17-

Next, the Court examined whether Castleman's conviction qualified as a "misdemeanor crime of domestic violence." Id. The Court began by querying whether the "categorical approach" articulated in Taylor v. United States, 495 U.S. 575 (1990) resolved the issue. Id. Under this approach, courts should "'look to the statutory definition of the offense in question, as opposed to the particular facts underlying the conviction.'" United States v. Dávila-Félix, 667 F.3d 47, 56 (1st Cir. 2011) (quoting United States v. Piper, 35 F.3d 611, 619 (1st Cir. 1994)). If the "statutory definition" of the prior state offense necessarily met the requirements of § 922(g)(9), then the Court would be able to determine that "a domestic assault conviction in Tennessee categorically constitutes a 'misdemeanor crime of domestic violence.'" See Castleman, 134 S. Ct. at 1414 (emphasis added).

The Castleman Court declined to make such a determination, however, and instead expressed its skepticism by stating that "[i]t does not appear that every type of assault defined by [the Tennessee statute] necessarily involves 'the use or attempted use of physical force, or the threatened use of a deadly weapon.'" Id. at 1413-14. For example, the Court reasoned that, under the Tennessee statute, "[a] threat . . . may not necessarily involve a deadly weapon, and the merely reckless causation of bodily injury . . . may not be a 'use' of force." Id. at 1414.

-18-

Because the parties in Castleman did not contest that the Tennessee statute is a "'divisible statute,'" the Court then applied the "modified categorical approach, consulting the indictment to which Castleman pleaded guilty in order to determine whether his conviction did entail the elements necessary to constitute the generic federal offense." Id. at 1414 (citing Descamps v. United States, 133 S. Ct. 2276, 2281-82 (2013)). In Castleman, the Court held, "that analysis is straightforward: Castleman pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child, and the knowing or intentional causation of bodily injury necessarily involves the use of physical force." Id. at 1414 (alteration in original) (internal citation omitted). The Court reasoned that "[i]t is impossible to cause bodily injury without applying force in the common-law sense," and "the knowing or intentional application of force is a 'use' of force." Id. at 1415. Therefore, the Court concluded that Castleman's conviction was a valid predicate offense for § 922(g)(9), because his "indictment makes clear that the use of physical force was an element of his conviction." Id.[9]

---

[9]  The Supreme Court further held that it was not persuaded by "Castleman's nontextual arguments," his "invocation of the rule of lenity," and his "cursory nod to constitutional avoidance concerns." Id. at 1415-16.

## 4. The Modified Categorical Approach

Here, Carter does not contend that the Maine general-purpose assault statute is an "indivisible" statute.  See id. at 1414; Descamps, 133 S. Ct. at 2281-82.[10]  Nor could he, as the Maine statute "sets out one or more elements of the offense in the alternative."  See Descamps, 133 S. Ct. at 2281; see also Me. Rev. Stat. tit. 17-A, § 207(1)(A) (providing that a person is guilty of "assault" if "[t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person") (emphasis added).  Therefore, the Maine statute is divisible, and "[w]e may accordingly apply the modified categorical approach."  See Castleman, 134 S. Ct. at 1414.

The Maine general-purpose assault statute is divisible into six permutations of subsumed offenses, based on the combination of one element from each of two categories: (1) mens rea ("intentionally, knowingly or recklessly"), and (2) actus reus ("causes bodily injury or offensive physical contact to another person").  See Me. Rev. Stat. tit. 17-A, § 207(1)(A).  We have previously held that both actus reus prongs of the Maine statute --

---

[10]  An "indivisible" statute does not contain alternative elements, but instead "has a single, indivisible set of elements." Descamps, 133 S. Ct. at 2281-82.  In Descamps, the Supreme Court held that courts -- in determining whether a past conviction constitutes a predicate offense for purposes of the sentencing enhancements enumerated in the Armed Career Criminal Act, 18 U.S.C. § 924(e) -- may apply the "modified categorical approach" to divisible statutes, but not to indivisible statutes.  See id.

-20-

bodily injury and offensive physical contact -- "necessarily involve the use of physical force" and thus can support a conviction under the Lautenberg Amendment. See Nason, 269 F.3d at 21. Subsequent controlling authority has not undermined this holding or reasoning. See, e.g., Castleman, 134 S. Ct. at 1410-13 (holding that an offensive touching, or the force supporting a common-law battery conviction, is sufficient to constitute the use of physical force for purposes of § 922(g)(9)); id. at 1415 ("It is impossible to cause bodily injury without applying force in the common-law sense."); Booker, 644 F.3d at 18 (rejecting the argument that the Supreme Court's opinion in Johnson, 559 U.S. 133, "repudiate[d] Nason's holding that 'offensive physical contact' involves the 'use of physical force' within the meaning of § 922(g)(9)").

In Booker, we further considered whether the Lautenberg Amendment requires a heightened mens rea requirement -- "namely, whether the federal definition of 'misdemeanor crime of domestic violence' can be read to prescribe an intentional state of mind for a qualifying predicate offense." Booker, 644 F.3d at 18. We rejected that argument, holding that "the statutory definition of 'misdemeanor crime of domestic violence' does not prescribe an intentional mens rea" and that a prior "offense with a mens rea of recklessness" may support a conviction under § 922(g)(9). Id. at 21.

-21-

However, the Supreme Court's recent decision in <u>Castleman</u> casts doubt upon this holding. <u>See</u> <u>Castleman</u>, 134 S. Ct. at 1414 & n.8. Dictum in <u>Castleman</u> suggests that "the merely reckless causation of bodily injury under [the Tennessee assault statute] may not be a 'use' of force." <u>Id.</u> at 1414. In support of this proposition, the Supreme Court noted that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient" to "constitute a 'use' of force." <u>Id.</u> at 1414 n.8 (contrasting our holding in <u>Booker</u> with the holdings of the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits). Ultimately, the Court did not need to resolve the recklessness question in <u>Castleman</u>, because "Castleman pleaded guilty to having 'intentionally or knowingly cause[d] bodily injury' to the mother of his child, and the knowing or intentional causation of bodily injury necessarily involves the use of physical force." <u>Id.</u> at 1414 (alteration in original) (internal citation omitted).

Based upon the Supreme Court's reasoning in <u>Castleman</u>, however, the validity of Carter's § 922(g)(9) conviction may depend on which mens-rea prong of the Maine general-purpose assault statute served as the basis for his guilty plea and conviction.[11]

---

[11] Given that <u>Castleman</u> does not directly overrule <u>Booker</u>, <u>stare decisis</u> would normally bind us to adhere to our earlier ruling on this issue. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Rodríguez-Pacheco</u>, 475 F.3d 434, 441 (1st Cir. 2007) (stating that "[a] panel of this court is normally bound to follow an earlier panel decision that is

-22-

Therefore, there remains a question as to which subsumed offense Carter pleaded guilty under the divisible Maine assault statute.

### 5. The "Approved" Shepard Documents

To answer this question, under the modified categorical approach, we may "consult[] the trial record -- including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms" -- in order to "determine which statutory phrase was the basis for the conviction" under such

_____

closely on point"). However, "we have recognized two exceptions to this stare decisis rule." Id. First, we may depart from an existing panel decision when subsequent controlling authority -- such as a Supreme Court opinion, First Circuit en banc opinion, or a new statute -- undermines our earlier opinion. Id. Second, there is a "limited exception that permits one panel to overrule another in 'those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind.'" Id. at 442 (quoting Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995) (subsequent case history omitted)).

The Supreme Court's statements in Castleman -- that "the merely reckless causation of bodily injury . . . may not be a 'use' of force," Castleman, 134 S. Ct. at 1414, and that "the Courts of Appeals have almost uniformly held that recklessness is not sufficient" to "constitute a 'use' of force," id. at 1414 n.8 -- provide a "'sound reason'" for thinking that the Booker panel might well "'change its collective mind'" in light of Castleman. See Rodríguez-Pacheco, 475 F.3d at 442 (quoting Williams, 45 F.3d at 592). Nonetheless, we need not decide today whether, in light of Castleman, a conviction under the "recklessly" prong of the Maine statute satisfies the "use or attempted use of physical force" requirement for purposes of § 922(g)(9), as the underlying documents may ultimately show that Carter's conviction was under one of the other two mens-rea prongs of the statute -- "intentionally" or "knowingly." See Me. Rev. Stat. tit. 17-A, § 207(1)(A); Castleman, 134 S. Ct. at 1414-15.

-23-

a divisible statute.  <u>Johnson</u>, 559 U.S. at 144; <u>see also</u> <u>Castleman</u>, 134 S. Ct. at 1414; <u>Descamps</u>, 133 S. Ct. at 2281; <u>Shepard</u> v. <u>United States</u>, 544 U.S. 13, 26 (2005) (plurality opinion); <u>Taylor</u>, 495 U.S. at 602.  In this context, "the facts underlying the conviction are relevant . . . only to identify which crime is the crime of conviction where (as is often true with divisible statutes) it is unclear which subsumed offense the defendant pled to or was found to have violated."  <u>Campbell</u> v. <u>Holder</u>, 698 F.3d 29, 33 (1st Cir. 2012).

Where, as here, the earlier state conviction involved a guilty plea, "the record of conviction will consist mainly of the charging document, written plea agreement, and transcript of the change-of-plea colloquy."  <u>United States</u> v. <u>Turbides-Leonardo</u>, 468 F.3d 34, 39 (1st Cir. 2006).  In addition to these "approved" records,[12] a federal court may also consider "some comparable judicial record," <u>United States</u> v. <u>Farrell</u>, 672 F.3d 27, 30 (1st Cir. 2012), or "any explicit factual finding by the trial judge to which the defendant assented," <u>Shepard</u>, 544 U.S. at 16.

However, "the information used to characterize the putative predicate offense must be 'confined to [the] records of the convicting court.'"  <u>Turbides-Leonardo</u>, 468 F.3d at 39 (quoting

---

[12]  These documents -- including the indictment, plea colloquy, and jury instructions -- are sometimes called "<u>Shepard</u> documents."  <u>See</u> <u>United States</u> v. <u>Mouscardy</u>, 722 F.3d 68, 77 (1st Cir. 2013); <u>United States</u> v. <u>Hart</u>, 674 F.3d 33, 41 (1st Cir. 2012); <u>see also</u> <u>Shepard</u>, 544 U.S. at 26; <u>Taylor</u>, 495 U.S. at 602.

Shepard, 544 U.S. at 23). In the subsequent federal proceeding, the district court avoids undertaking an independent evidentiary inquiry -- outside of the record of conviction -- into the factual basis for the predicate state offense. See Shepard, 544 U.S. at 20; United States v. Giggey, 551 F.3d 27, 40 (1st Cir. 2008); Turbides-Leonardo, 468 F.3d at 39 ("[A]n inquiring court cannot retry the original case but, rather, must restrict its probing to the record of conviction."). Therefore, courts may not rely on the police reports related to the earlier conviction. Shepard, 544 U.S. at 16; Farrell, 672 F.3d at 30.[13] Similarly, "'a presentence report in a subsequent case ordinarily may not be used to prove the details of the offense conduct that underlies a prior conviction.'" Dávila-Félix, 667 F.3d at 57 (quoting Turbides-Leonardo, 468 F.3d at 39).

Thus, to determine which subsumed offense under Maine's assault statute formed the basis for Carter's guilty plea and conviction, we look to the relevant "approved" documents from the record of that earlier assault conviction. See, e.g., Hart, 674 F.3d at 41; Farrell, 672 F.3d at 30. Those documents in the record

---

[13] See also United States v. Beardsley, 691 F.3d 252, 272 (2d Cir. 2012) ("[W]hile looking to police reports and other hearsay accounts of the underlying conduct leading to the conviction would be dangerous -- since that information was never submitted to a jury, or formally admitted by the defendant -- and would lead to time-consuming fact-finding ventures by sentencing courts, looking to the formal documents related to the case, as is permitted where the modified categorical approach applies, would not seem to present those problems.").

currently before us are inconclusive. Carter introduced eight pages of records pertaining to the relevant assault conviction in Maine state court.[14] These records include the Information dated April 1, 1997; a docket sheet pertaining to the case, which includes certain minutes of the proceedings before the Maine state court and the court's judgment; and the Knox County Sheriff's Department incident report, including the arresting officer's narrative and the victim's statement.

The former two documents -- the Information and the docket sheet -- are of no use here in determining which subsumed offense formed the basis of Carter's prior assault conviction.[15] The latter document -- the police incident report -- might include sufficient details to make such a determination, but we are precluded from using it for that purpose. See, e.g., Shepard, 544 U.S. at 16 (when applying the modified categorical approach, courts may not rely on the police reports underlying the earlier

---

[14]  These records were appended both as an addendum to Carter's appellate brief and as exhibits to his original motion to dismiss the indictment before the district court.

[15]  The Information merely restates the alternative elements of the divisible statute: "Wayne Carter did intentionally, knowingly or recklessly cause bodily injury or offensive physical contact to Angie Eagan."  Thus, the Information does not help distinguish which mens rea prong forms the basis of Carter's conviction.  As relevant here, the docket sheet states that Carter was arraigned and "waived reading, plea -- guilty," and then was adjudged to be "guilty of Assault, Class D (17-A § 207) as charged and convicted." The docket sheet does not provide further details regarding Carter's guilty plea and conviction.

conviction); <u>Farrell</u>, 672 F.3d at 30 (same); <u>Beardsley</u>, 691 F.3d at 272 (same). In the record before us, there is no evidence regarding a plea colloquy, plea agreement, or any findings of fact by the Maine state court. It is not clear whether a transcript of the plea colloquy exists, whether a written plea agreement is available, whether the state court made any findings of fact, or whether there are any other "approved" <u>Shepard</u> documents or comparable judicial records available with respect to Carter's prior assault conviction. <u>See</u> <u>Shepard</u>, 544 U.S. at 26; <u>Taylor</u>, 495 U.S. at 602; <u>Mouscardy</u>, 722 F.3d at 77. Thus, on the <u>Shepard</u> documents currently before us, the record is insufficiently developed to determine which variant of the Maine general-purpose assault statute served as the basis for Carter's conviction.

The district court denied Carter's motion to dismiss on this issue in a one-sentence order based on our decision in <u>Booker</u>, reasoning that <u>Booker</u> "serves as binding and controlling precedent for the issues presented in Defendant's Motion." Given that -- at the time -- <u>Booker</u> and <u>Nason</u> together established that every variant of the Maine general-purpose assault statute could constitute a "misdemeanor crime of domestic violence," <u>see</u> <u>Booker</u>, 644 F.3d at 21; <u>Nason</u>, 269 F.3d at 11-12, 21, it is understandable that the parties failed to proffer additional <u>Shepard</u> documents. <u>Cf.</u>, <u>e.g.</u>, <u>United States</u> v. <u>Holloway</u>, 630 F.3d 252, 263 (1st Cir. 2011) ("At the time the government had the opportunity to introduce

Shepard type documents beyond the indictment alone to support its theory but did not do so.  Because, however, both the government and the district courts were operating on the premise that Mangos remained good law, the failure to proffer such evidence was more than understandable.").  As such documents may exist, we think it appropriate to remand the case to the district court to allow the parties to further develop the record on this issue.

Accordingly, we vacate Carter's conviction and the district court's denial of his original motion to dismiss the indictment, and we remand the case for further proceedings consistent with this opinion and in light of the Supreme Court's opinion in Castleman, 134 S. Ct. 1405, and its vacation of our judgment in Armstrong, see 82 U.S.L.W. 3566.  Cf. Holloway, 630 F.3d at 263 (vacating the appellants' sentences, remanding for resentencing, and reasoning that "[u]nder the circumstances, we perceive no unfairness in allowing the government the opportunity to pursue both . . . theories on remand, using Shepard approved documents").

**C. Sporting/Collection Exception Under the Sentencing Guidelines**

Given that we are vacating Carter's conviction, we need not reach his arguments regarding the application of the Sentencing Guidelines.  See, e.g., United States v. Cameron, 699 F.3d 621, 653 (1st Cir. 2012) ("Because we must reverse Cameron's conviction with respect to six counts, we need not reach his sentencing challenge

-28-

at this time."); <u>United States</u> v. <u>Rosa-Ortiz</u>, 348 F.3d 33, 36 n.5 (1st Cir. 2003) ("Because we hold that Rosa-Ortiz's conduct was not a crime within the statute of conviction, however, we do not reach the sentencing issue.").

### III. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's denial of Carter's supplemental motion to dismiss the indictment on constitutional grounds; we vacate his conviction and the district court's denial of his original motion to dismiss the indictment on statutory grounds; and we remand the case to the district court for further proceedings consistent with this opinion and in light of the Supreme Court's opinion in <u>Castleman</u>, 134 S. Ct. 1405, and its vacation of our judgment in <u>Armstrong</u>, <u>see</u> 82 U.S.L.W. 3566.

**<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED.</u>**