# United States Court of Appeals
## For the First Circuit

No. 14-1844

UNITED STATES OF AMERICA,

Appellant,

v.

WAYNE CARTER,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

Renée M. Bunker, Assistant United States Attorney, with whom
Thomas E. Delahanty II, United States Attorney, was on brief, for
appellant.
    J. Hilary Billings, Assistant Federal Defender, for appellee.

June 22, 2017

**KAYATTA**, **Circuit Judge**.  This appeal challenges us to figure out how best to put a case back on track following a conviction, a vacation of that conviction on appeal, a dismissal of the indictment on remand, a government appeal of that dismissal, and the subsequent issuance of controlling authority making it clear that the original conviction was proper.  For the following reasons, we again remand the case, this time for reentry of the judgment of conviction and the sentence, albeit with leave for the defendant to proceed with a previously preserved challenge to his sentence.

## I.

On April 1, 1997, Carter pled guilty in state court to violating Maine's assault statute, Me. Stat. tit. 17-A, § 207(1)(A).  The victim was Carter's girlfriend and the mother of one of his children.[1]  Thirteen years later, Carter was indicted for violating 18 U.S.C. § 922(g)(9) by possessing a firearm that

---

[1] "[T]he domestic relationship, although it must be established beyond a reasonable doubt in a § 922(g)(9) firearms possession prosecution, need not be a defining element of the predicate offense." United States v. Hayes, 555 U.S. 415, 418 (2009).  Carter's relationship to the victim of the 1997 assault is described in the prosecution's version of the facts, which was filed the day before Carter's conditional plea.  No transcript of the change-of-plea colloquy exists, so we cannot verify that Carter admitted this particular fact during his guilty plea.  Nevertheless, Carter has not challenged that this element of the offense was satisfied, and he admitted in his sentencing memoranda that the assault victim was his "live-in girl friend [sic]" and "domestic partner."

he had inherited, kept, pawned, and redeemed after the 1997 assault conviction. Under § 922(g)(9), it is unlawful for a person "who has been convicted in any court of a misdemeanor crime of domestic violence" to possess a firearm. A "misdemeanor crime of domestic violence" includes any state-law misdemeanor that "has, as an element, the use or attempted use of physical force . . . committed . . . by a person with whom the victim shares a child in common . . . or by a person similarly situated to a spouse . . . of the victim." 18 U.S.C. § 921(a)(33)(A)(i)-(ii).

Carter moved to dismiss the indictment on the ground that the Maine assault statute could be violated with a mens rea of recklessness and that a reckless assault does not have as an element the "use" of physical force. Later, he filed a supplemental motion to dismiss arguing that § 922(g)(9) unconstitutionally infringes on his Second Amendment rights. The district court denied these motions in July 2011 and March 2012, respectively. Based on this court's then-recent opinion in United States v. Booker, 644 F.3d 12, 21 (1st Cir. 2011), the district court rejected the argument that a misdemeanor crime of domestic violence does not include any crime for which recklessness is a sufficient mens rea. Carter ultimately pled guilty but reserved his right to appeal the denial of his motions to dismiss and his sentence.

While Carter's appeal was pending, the Supreme Court decided United States v. Castleman, 134 S. Ct. 1405 (2014), which held that "physical force" in 18 U.S.C. § 921(a)(33)(A) means only the amount of force required for common law battery and not the "violent force" required for a violent felony by Johnson v. United States, 559 U.S. 133, 140 (2010). Castleman, 134 S. Ct. at 1413. The mens rea required for a "use" of physical force was not at issue in Castleman, but the opinion volunteered that "the merely reckless causation of bodily injury . . . may not be a 'use' of force." Id. at 1414. Supporting that possibility, the Court added a footnote stating that "[a]lthough [Leocal v. Ashcroft, 543 U.S. 1 (2004),] reserved the question whether a reckless application of force could constitute a 'use' of force, the Courts of Appeals have almost uniformly held that recklessness is not sufficient." Castleman, 134 S. Ct. at 1414 n.8 (citation omitted). That footnote contained a "[b]ut see" citation to Booker. Id. Piling tangible action on top of dictum, the Court subsequently granted, vacated, and remanded both United States v. Armstrong, 706 F.3d 1 (1st Cir. 2013), which had followed Booker on this point, see id. at 4-5, and United States v. Voisine, 495 F. App'x 101 (1st Cir. 2013), which had followed Armstrong, see id. at 101-02. The Supreme Court instructed this court to reconsider both cases in light of Castleman. See Armstrong v. United States, 134 S. Ct. 1759 (2014) (Mem.).

The panel that heard Carter's appeal paid attention to these signals. It observed that although Booker and Armstrong would normally require it to hold that reckless assault is a misdemeanor crime of domestic violence, there was "sound reason for thinking that the Booker panel might well change its collective mind in light of Castleman." United States v. Carter, 752 F.3d 8, 18-19 n.11 (1st Cir. 2014) (citations omitted). Noting the uncertainty generated by Castleman and the remand of Armstrong, the panel opted to see if further development of the record might moot the question. Id. at 21. Specifically, the panel observed that the parties did not dispute that the Maine assault statute was divisible into different forms of the offense with different mens rea elements. Id. at 17. In such circumstances, gathering and assessing "the underlying [Shepard[2]] documents may ultimately [have] show[n] that Carter's conviction was under one of the other two mens-rea prongs of the statute--'intentionally' or 'knowingly.'" Id. at 18-19 n.11. The panel therefore "vacate[d] [Carter's] conviction and the district court's denial of his

---

[2] Shepard v. United States, 544 U.S. 13 (2005), allows a court determining which form of a divisible offense a prior conviction fell under to "'consult[] the trial record--including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms'--in order to 'determine which statutory phrase was the basis for the conviction.'" Carter, 752 F.3d at 19 (alteration in original) (quoting Johnson, 559 U.S. at 144).

original motion to dismiss the indictment on statutory grounds" and "remand[ed] the case to the district court for further proceedings consistent with th[e] opinion and in light of the Supreme Court's opinion in Castleman and its vacation of [this court's] judgment in Armstrong." Id. at 21 (citations omitted). In so doing, the panel plainly left open the ultimate resolution of Carter's challenge to his conviction. See id. at 18-19 n.11 ("[W]e need not decide today whether, in light of Castleman, a conviction under the 'recklessly' prong of the Maine statute satisfies the 'use or attempted use of physical force' requirement for purposes of § 922(g)(9) . . . ."); see also United States v. Voisine, 778 F.3d 176, 186 (1st Cir. 2015) ("In United States v. Carter, . . . [t]he opinion noted that Castleman 'casts doubt' upon Booker, but it explicitly did 'not decide' the question before this court." (citations omitted)).

On remand, it turned out that no Shepard documents demonstrated that the state-court conviction was for the intentional or knowing version of the assault offense. Thus, the question whether an offense resting on reckless conduct constituted a misdemeanor crime of domestic violence remained front and center. Also viewing Castleman as a harbinger, the district court reversed course and concluded that the reckless form of the Maine assault statute did not qualify as a misdemeanor crime of domestic violence. The district court understood the

Supreme Court to have vacated Armstrong in order to pull this circuit into line with the other circuits with respect to whether one can "use . . . physical force" recklessly within the meaning of § 921(a)(33)(A)(ii). It also understood the observation in Carter that the Booker panel might "change its collective mind in light of Castleman" to mean that Booker was no longer binding. After finding that the Shepard documents did not establish the form of assault of which Carter was convicted, the district court dismissed the indictment. The government filed this appeal.

The appeal was stayed pending this court's decisions in Armstrong and Voisine, which were consolidated for reconsideration. As it turned out, Castleman's augury proved false. This court concluded that, notwithstanding Castleman, the reckless form of the Maine assault statute is a misdemeanor crime of domestic violence within the meaning of § 921(a)(33)(A)(ii). See Voisine, 778 F.3d at 177. The Supreme Court affirmed. See Voisine v. United States, 136 S. Ct. 2272, 2276 (2016). In so doing, it plainly and finally resolved the uncertain issue of law that has sent this case around the barn and back. As the district court first held in 2012, Carter's conviction for assault was a conviction for a misdemeanor crime of domestic violence. We must, therefore, reverse the decision below and order the indictment reinstated in light of Voisine.

That leaves two related loose ends:   Carter's appeal from the calculation of his sentence, and the related question of how best to craft our mandate to facilitate the completion of this case.[3]

## II.

Carter's challenge to his sentence trains on a single issue:  whether the district court erred in finding that Carter's unlawful possession of firearms did not qualify for a substantially lower guidelines sentencing range based on what we have called the "'sporting purposes or collection' exception."   See Carter, 752 F.3d at 12; U.S. Sentencing Guidelines Manual § 2K2.1(b)(2). Carter properly preserved his objections to the district court's finding both in the district court and on his original appeal. The panel hearing that appeal nevertheless did not reach the sentencing challenge because it remanded for reconsideration of the conviction.   See Carter, 752 F.3d at 21.   When the district court on remand dismissed the indictment, any questions concerning the sentence dropped out, only now to be revived by our conclusion that the conviction was proper.

---

[3] Carter also argues that § 922(g)(9) violates the Second Amendment as applied to him.   He recognizes, however, that this court rejected this exact constitutional challenge in Carter.  752 F.3d at 12–13.   The law of the case and the law of the circuit thus both foreclose this argument.

The fact that Carter has completed his prison sentence does not moot his sentencing challenge. See United States v. Molak, 276 F.3d 45, 48 (1st Cir. 2002). In simple terms, if the sentencing guidelines treated his criminal conduct as warranting much less prison time than the district court thought was the case, the district court might well adjust the length of supervised release deemed appropriate.[4]

The government complains that Carter has yet to serve his supervised release only because, while out on bail for this case, he committed a state crime that extended his incarceration. That may be so, but the fact remains that he still has a real stake in challenging his sentence, so the challenge is not moot. Cf. United States v. DeLeon, 444 F.3d 41, 55 (1st Cir. 2006) (finding sentencing challenge moot despite pending supervised release term only because defendant was "in immigration custody and facing imminent deportation from the United States").

Ideally, we would decide the sentencing issue now ourselves. The parties agree, though, that (in the words of

---

[4] The district court's decision not to apply the sporting purposes or collection exception made a significant difference to Carter's guidelines sentencing range. Without the exception, Carter's guidelines sentencing range was eighteen to twenty-four months. If the district court had applied the exception, Carter's guidelines sentencing range may have been as low as zero to six months. Carter's year-and-a-day sentence of imprisonment, which was a downward variance from the guidelines sentencing range the district court used, would have been an upward variance from the guidelines sentencing range if the exception applied.

Carter's brief) "the 'Sporting Purposes or Collection' exception issue is not appropriately presented for consideration in the context of this appeal." The government has not briefed the merits. And this docket does not contain the full record germane to the issue. So prudence requires a remand to get it teed up.

## III.

That leaves the question of what we should order the district court to do on remand. The relevant statutes and case law grant this court broad power to craft remand orders.

> [A]ny . . . court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.

28 U.S.C. § 2106. This court has interpreted this power to allow it, for instance, to order the entry of a conviction for a lesser-included offense when the evidence is insufficient to sustain a conviction for a greater offense. See United States v. Sepúlveda-Hernández, 752 F.3d 22, 28–31 (1st Cir. 2014).

Carter argues that it would not be appropriate to reinstate the indictment, conviction, and sentence. Effectively, Carter argues that the only appropriate order is one that would place him in a position similar to where he would have been had the district court, after the remand, correctly predicted how this

court and the Supreme Court would rule in Voisine. Had the district court done so, Carter argues, he may have been able to resist reinstitution of the vacated conviction based on his original guilty plea, and gone to trial. But there is another possible retrospective reconstruction: We could craft an order that places Carter in a situation similar to where he would have been had the previous panel of this court correctly predicted how this court and the Supreme Court would rule in Voisine. Had that panel done so, it never would have vacated the conviction and sentence. We see no reason why the former approach would be more appropriate than the latter in these circumstances. As we have explained, Carter did not decide the question resolved in Voisine, so the latter approach is not inconsistent with Carter. Moreover, at this point, Carter has not demonstrated any error in either his conviction or his sentence, and he points to no remaining basis upon which he might assert innocence.

Nor do Carter's unspecified "concerns" under the Speedy Trial Act or the statute of limitations alter this conclusion. Carter has not made any legal argument that the proceedings thus far have violated these statutes. On appeal, intimations toward potential arguments are insufficient. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving

- 11 -

the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

While there are no perfect options, we think it best to get the parties back to where they would have been but for the Castleman-Voisine detour:  before a panel of this court on a complete record with the sole remaining sentencing issue fully briefed.  There is time to do this because Carter has finished his prison sentence, yet not begun his two-year period of supervised release.[5]  So on remand, the district court will promptly reinstitute the original conviction and sentence, ensuring before it does so that the record contains all materials germane to the sporting purposes or collection exception.  Carter may then appeal that single issue, and it will be decided as it would have been but for the detour we have described above.  The appeal will likely be expedited should Carter so request.

**IV.**

For the foregoing reasons, we <u>reverse</u> the order of the district court dismissing the indictment and <u>remand</u> the case to the district court for reinstatement of the indictment.  We <u>order</u>, further, that (1) the district court shall reenter the April 23, 2012 judgment, modified to indicate that Carter has already served

---

[5] At oral argument, the government represented that Carter completed his state prison sentence in March 2016, so the supervised release term will commence once the sentence is reinstated.

the term of imprisonment and that only the supervised release term remains to be served; (2) the district court shall ensure that the record contains all materials germane to its prior decision not to apply the sporting purposes or collection exception; and (3) Carter shall have fourteen days from the date the district court reenters the conviction and sentence to file a notice of appeal challenging the district court's ruling on the sporting purposes or collection exception at his sentencing hearing. The proceeding shall otherwise go forward in accordance with this opinion.