# United States Court of Appeals
## For the First Circuit

---

No. 99-2020

UNITED STATES,

Appellee,

v.

CHRISTOPHER JAMES BAYES,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

---

Before

Boudin, Stahl, and Lynch,
Circuit Judges.

---

Daniel G. Lilley, with whom Daniel G. Lilley Law Offices, PA, was on brief for appellant.
F. Mark Terison, Senior Litigation Counsel, with whom Jay P. McCloskey, United States Attorney, was on brief for appellee.

---

April 21, 2000

---

**STAHL, Circuit Judge**. Christopher Bayes was convicted on one count of simple assault in violation of 18 U.S.C. § 113(a)(5) and 49 U.S.C. § 46506(1). On appeal, Bayes challenges the sufficiency of the evidence to support his conviction and also contests his sentence. For the following reasons, we affirm.

## I.

### Background

As with any challenge to the sufficiency of the evidence following a trial by jury, we recite the facts in the light most favorable to the jury's verdict. See United States v. DeMasi, 40 F.3d 1306, 1310 (1st Cir. 1994).

On June 5, 1999, Bayes boarded Delta Airlines Flight 64 from Atlanta, Georgia, to Manchester, England. Debbie Parker, Mario Garcia, and Carron Smoak were the three flight attendants apparently responsible for the section of the cabin in which Bayes was seated. Before the plane left the gate, Parker served Bayes a glass of champagne and a glass of orange juice. When Garcia went to collect the two glasses a short while later, Bayes responded by saying, "What are you, crazy?" Although Garcia concluded that "we might have an unruly passenger" on board, Parker gave Bayes another alcoholic beverage once the plane was in the air.

About an hour into the flight, Parker and Smoak began to distribute linen, flatware, and bread dishes by placing them on each passenger's dining tray. After providing Bayes with these items, Smoak asked him what kind of bread he wanted. As Smoak "reached over [her service] cart to get the roll that he said he wanted . . . [Bayes] put his hand on [her] buttocks and rubbed [her] buttocks and grabbed at the bottom of [her] buttocks." Bayes claimed to have touched Smoak by accident, but Wade McCallon, a passenger seated nearby, later described what had occurred as "reaching behind the flight attendant and grabbing her in the rear end" and "squeezing."

Smoak immediately complained about Bayes's conduct to her on-board supervisor, Susan Corbett, and to the on-board Customer Service Coordinator, Christopher Yates. Although there are conflicting accounts of exactly what happened next, there was evidence that Bayes persisted in being unruly despite periodic warnings from members of the crew. A scuffle ensued, ending only after the captain dumped thousands of gallons of fuel, diverted the aircraft in mid-flight, and made an unscheduled landing so that Bayes could be taken off the plane at Bangor International Airport in Maine.

Bayes was charged with five counts of simple assault against Smoak, Garcia, Corbett, Yates, and a passenger named

Rhine Blake. See 18 U.S.C. § 113(a)(5) (criminalizing "[s]imple assault" within the special maritime and territorial jurisdiction of the United States); 49 U.S.C. § 46506(1) (incorporating the conduct proscribed by 18 U.S.C. § 113(a)(5) as an offense within the special aircraft jurisdiction of the United States). Bayes also faced one count of interfering with a flight crew in violation of 49 U.S.C. § 46504. After a five-day trial, a jury convicted Bayes of the assault against Smoak but either acquitted him or failed to reach a verdict with respect to the other charges. The district court sentenced Bayes to six months in prison with a $10 special assessment and a $5000 fine. This appeal followed.

## II.

### A.

Bayes supports his challenge to the sufficiency of the evidence by arguing that the offense for which he was convicted requires a specific kind of intent that the government failed to prove. Before reaching this claim, however, we must consider whether Bayes has preserved the issue for appellate review.

After the government rested its case at trial, Bayes moved for a judgment of acquittal. See Fed. R. Crim. P. 29(a). Although Bayes made his motion "on all counts," the arguments he offered to support it spoke only to the other counts in the

-5-

indictment and not to the charge of assaulting Smoak. When pressed on the issue, Bayes's attorney conceded that "as far as Carron Smoak's case [goes], the best view of the evidence would be an assault. So, I'm not going to argue that that couldn't be found by the jury." A few moments later, counsel confirmed that Bayes was not moving for a directed finding with respect to that charge because "if you believe [Smoak], there's sufficient evidence for a jury to find [Bayes] guilty."

In any event, the district court refused to enter a judgment of acquittal, the trial proceeded, and ultimately the jury found Bayes guilty only of assaulting Smoak. After the jury was released, Bayes filed a new motion for a judgment of acquittal questioning the sufficiency of the evidence supporting the charge of conviction. See Fed. R. Crim. P. 29(c) ("It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury."). Although this motion did put the relevant count of conviction under scrutiny, it still failed to raise the question of intent, merely arguing that none of the witnesses could have seen the alleged attack. (Motion for Judgment of Acquittal ("The testimony of Carron Smoak failed to place her in a position on the airplane where witnesses could have observed that the alleged assault took place.").)

On appeal, Bayes now seeks to change hats. Rather than claiming that no one could have witnessed the alleged assault, Bayes contends that his offense of conviction requires a specific kind of intent that the government failed to establish. Because Bayes never brought this argument to the district court's attention, we might consider it waived. See, e.g., United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998) ("A litigant cannot jump from theory to theory like a bee buzzing from flower to flower. . . . [W]hen a party fails to raise a theory at the district court level, that theory is generally regarded as forfeited and cannot be advanced on appeal."), cert. denied, 67 U.S.L.W. 3613 (1999).

But even in the face of procedural default, we retain the discretion to correct "[p]lain errors or defects affecting substantial rights." Fed. R. Crim. P. 52(b). We will exercise this discretion only to correct (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." United States v. Johnson, 520 U.S. 461, 467 (1997) (citations and internal quotation marks omitted) (alteration in original). With this standard in mind, we turn our attention to whether there has been a plain error or defect

-7-

in this case and, if so, whether it warrants redress under Rule 52(b).

## B.

Bayes contends that the evidence failed to support his conviction for simple assault because the government did not prove that he intended to injure Smoak or to threaten her with harm when he touched her on the buttocks. Viewing the evidence in the light most favorable to the jury's verdict, we consider whether a rational juror could have found guilt beyond a reasonable doubt. See United States v. Alicea-Cardoza, 132 F.3d 1, 5 (1st Cir. 1997).

Bayes was convicted of violating 18 U.S.C. § 113(a)(5), which proscribes the crime of "[s]imple assault" but does not define that term in any way. Although the statute neither states nor suggests that simple assault requires the defendant to have acted with a specific kind of intent, the district court concluded that the offense demanded exactly that. As a result, the court instructed the jury that "to prove simple assault, the government must demonstrate [that] the defendant willfully attempted to inflict injury upon the person of another or threatened to inflict injury upon the person of another, coupled

with an apparent present ability to do so, [and/or[1]] caused [a] reasonable apprehension of immediate bodily harm."

If this instruction accurately described the level of intent that § 113(a)(5) requires, then we might question whether there was sufficient evidence on which to base a conviction. The jury reasonably could have found that Bayes had touched Smoak on the buttocks on purpose, given her testimony that he had "put his hand on [her] buttocks and rubbed [her] buttocks and grabbed at the bottom of [her] buttocks." McCallon confirmed that Bayes had "reach[ed] behind [Smoak] and grabb[ed] her in the rear end" and "squeez[ed]." But this testimony merely supported the conclusion that Bayes had touched Smoak deliberately; it did not necessarily demonstrate that Bayes had intended to injure Smoak or to threaten her with harm when he touched her. Likewise, while Smoak testified that Bayes's conduct caused her to feel "frightened," it was at least debatable whether Bayes intended that result.

Nevertheless, § 113(a)(5) merely prohibits "[s]imple assault" without specifying a particular kind of intent as a

---

[1]The trial court should have included a conjunction here to indicate whether a "reasonable apprehension of immediate bodily harm" was an additional element of simple assault or an alternative basis for conviction. The trial transcript indicates that the court failed to make this distinction, but our resolution of the merits does not depend on the court's intentions in this regard.

textual element of the offense. The district court's requirement that Bayes "willfully attempted to inflict injury upon the person of another or threatened to inflict injury" does not appear anywhere in the statutory language. Unlike § 113(a)(1) of the statute, which criminalizes "[a]ssault with intent to commit murder," and § 113(a)(3), which prohibits "[a]ssault with a dangerous weapon, with intent to do bodily harm," a specific kind of intent is not inherent in the statutory definition of the crime for which Bayes was convicted. The fact that Congress enumerated a very specific type of intent for some kinds of assault but not for others casts doubt on whether "[s]imple assault" -- a term left undefined -- requires an intent to cause harm or to threaten another with injury. See United States v. Martin, 536 F.2d 535, 535-36 (2d Cir. 1976) (per curiam).

We turn to the common law for additional guidance. See United States v. Turley, 352 U.S. 407, 411 (1957) ("[W]here a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning."). Assault had two meanings at common law, "the first being an attempt to commit a battery and the second [being] an act putting another in reasonable apprehension of bodily harm." United States v. Bell,

-10-

505 F.2d 539, 540 (7th Cir. 1974); see also United States v. Guilbert, 692 F.2d 1340, 1343 (11th Cir. 1982). A battery, in turn, did not require proof that the defendant intended to injure another or to threaten her with harm. "The slightest willful offensive touching of another constitute[d] a battery . . . regardless of whether the defendant harbor[ed] an intent to do physical harm." United States v. Williams, 197 F.3d 1091, 1096 (11th Cir. 1999); see also Burton v. Livingston, 791 F.2d 97, 99 (8th Cir. 1986) (noting that "a plaintiff may seek redress and win damages under state law for any unwanted touching under the common law of battery").

Thus, under the traditional view, "offensive touchings (as where a man puts his hands upon a girl's body or kisses a woman against her will . . .) w[ould] also suffice for battery" in the absence of a valid justification or excuse. 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 7.15(a), at 301-02 (1986). As Blackstone observed in his Commentaries:

> The lea[s]t touching of another's per[s]on wilfully, or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the fir[s]t and lowe[s]t [s]tage of it: every man's per[s]on being [s]acred, and no other having a right to meddle with it, in any the [s]lighte[s]t manner.

-11-

3 Blackstone, Commentaries on the Laws of England 120 (Univ. of Chicago Press ed. 1979) (1768) (alterations from old English).

Consistent with these principles, the common law provided that an assault committed by way of a battery did not require an intent to cause or to threaten an injury as long as the defendant touched another in a deliberately offensive manner without a valid reason to do so. See 2 LaFave & Scott, supra, § 7.16(a), at 37 n.13.1 (Supp. 1999). In Gates v. State, for example, a Georgia court affirmed a conviction for "assault and battery" based on evidence that the defendant "twice deliberately 'touched,' 'tapped' or 'hit' [someone] on the buttocks" without her consent. 138 S.E.2d 473, 474 (Ga. Ct. App. 1964). Similarly, in Wood v. Commonwealth, the Virginia Supreme Court affirmed a conviction for "assault and battery" based on evidence that the defendant groped a minor in a nonviolent but sexually offensive manner. 140 S.E. 114, 115-16 (Va. 1927). Likewise, in Guarro v. United States, the D.C. Circuit observed that "[u]nless there is consent, it would seem that a [nonconsensual] sexual touching is a sufficiently offensive act to constitute an assault" under District of Columbia law. 237 F.2d 578, 580-81 (D.C. Cir. 1956).

These cases do not control our decision, but they provide useful guidance as to what constitutes an assault at

common law.  Collectively, the decisions support the conclusion that, in a prosecution for simple assault under § 113(a)(5), it is sufficient to show that the defendant deliberately touched another in a  patently offensive manner without justification or excuse.  Cf. United States v. Frizzi, 491 F.2d 1231, 1232 (1st Cir. 1974) (concluding that spitting would support a conviction for assaulting or otherwise impeding a federal officer in violation of 18 U.S.C. § 111 because "[a]lthough minor, it is . . . a bodily contact intentionally highly offensive").  We agree with the views of some of our sister circuits in this regard.  See, e.g., Williams, 197 F.3d at 1096 (concluding that § 113(a)(5) does not require an intent to cause physical harm and therefore covers the act of touching a minor in a nonviolent but sexual manner); Martin, 536 F.2d at 536 (indicating that neither "assault by striking, beating[,] or wounding" nor "simple assault" requires an intent to do bodily harm); cf. United States v. Masel, 563 F.2d 322, 324 (7th Cir. 1977) (affirming a conviction for assaulting a member of Congress in violation of 18 U.S.C. § 351, based on evidence that the defendant "willfully caused, by spitting, an offensive touching").

Against this background, it appears that the district court's instructions to the jury overstated the government's burden, to the defendant's benefit, by demanding proof of a

higher level of intent than § 113(a)(5) actually requires. With the correct standard in mind, we turn to the evidence in the record. Although Bayes maintained that he had touched Smoak to get her attention and that any contact with her buttocks was accidental, there was an abundance of competing testimony that he had "rubbed [her] buttocks and grabbed at the bottom of [her] buttocks" and "squeez[ed]." Smoak testified that she felt "angry," "surprised," and "frightened" when Bayes touched her. In the face of this testimony, the jury was entitled to conclude that Bayes had groped Smoak in a way that could not have been accidental, that must have been deliberate, and that was patently offensive. On these facts, the evidence amply supported a conviction for simple assault under 18 U.S.C. § 113(a)(5). There was no plain error.

## III.

Bayes also challenges the length of his prison sentence. Because simple assault is punishable by a maximum of six months in prison, either with or without a fine, see 18 U.S.C. § 113(a)(5), it constitutes a Class B misdemeanor that is exempt from the United States Sentencing Guidelines ("the Guidelines"), see U.S.S.G. § 1B1.9 & application note 1. We will uphold a sentence for a non-Guidelines offense unless the

sentence was "imposed in violation of law" or was "plainly unreasonable." 18 U.S.C. §§ 3742(e)(1) & (4).

The district court sentenced Bayes to six months in prison with a $10 special assessment and a $5000 fine. Bayes concedes that this sentence was within the range that § 113(a)(5) permits, but argues that it was plainly unreasonable to give him the maximum allowable term of imprisonment. In support of this claim, Bayes contends that the district court based its sentence entirely on conduct for which the jury either acquitted him or failed to reach a verdict, when the court instead should have focused on the assault for which he was convicted.

Both the facts and the law belie Bayes's argument. Although the district court considered "hung-jury conduct" in order to determine Bayes's sentence, it also considered "relevant conduct" that pertained directly to his offense of conviction. Thus, contrary to what Bayes contends, the court did not focus "only" on conduct for which he was never convicted. In any event, the court's consideration of hung-jury conduct was permissible as a matter of law. See 18 U.S.C. § 3661 (providing that "[n]o limitation shall be placed" on a trial court's ability to consider the defendant's "background, character, and conduct" in order to arrive at an appropriate

sentence); <u>see also</u> <u>United States</u> v. <u>Lombard</u>, 102 F.3d 1, 5 (1st Cir. 1996) (observing that even acquitted conduct may be taken into account); <u>cf.</u> <u>United States</u> v. <u>Watts</u>, 519 U.S. 148, 153-54 (per curiam) (concluding that even under the Guidelines, courts can consider "all other related conduct, whether or not it resulted in a conviction").

In the final analysis, the district court understood that its goal was to determine "what is an appropriate sentence for the crime that the defendant was found guilty of." After surveying the facts surrounding Bayes's case, the court concluded that the defendant's unwillingness to accept responsibility for assaulting Smoak, the impact of his conduct on the "specific victim of the assault charge," and the risk that his conduct posed on an airplane in mid-flight warranted the imposition of the maximum allowable prison term. These considerations properly reflected the interests of punishment, deterrence, and public safety that a court ought to weigh at sentencing. <u>See</u> 18 U.S.C. § 3553(a)(2)(A), (B), & (C). Against this background, the district court's sentence was appropriate.

**IV.**

**Conclusion**

For the foregoing reasons, we affirm the defendant's conviction and sentence.

-16-

**<u>Affirmed.</u>**