*177 LYNCH, Chief Judge.
The Supreme Court has directed us, in light of United States v. Castleman, — U.S. -, 134 S.Ct. 1405, 188 L.Ed.2d 426 (2014), to consider again our decision in these two cases that both defendants had indeed been convicted under state law of “misdemeanor crimes of domestic violence,” as defined in 18 U.S.C. § 921(a)(33)(A), even though the state statutes allowed conviction based on a recklessness mens rea. Armstrong v. United States, — U.S. -, 134 S.Ct. 1759, 188 L.Ed.2d 590 (2014) (Mem.); see United States v. Armstrong, 706 F.3d 1 (1st Cir. 2013); United States v. Voisine, 495 Fed. Appx. 101 (1st Cir.2013) (per curiam). If so, then their motions to dismiss their federal charges for possessing firearms after such convictions, in violation of 18 U.S.C. § 922(g)(9), were properly denied.
Our answer is informed by congressional recognition in § 922(g)(9) of the special risks posed by firearm possession by domestic abusers. “Domestic violence often escalates in severity over time ... and the presence of a firearm increases the likelihood that it will escalate to homicide.... ” Castleman, 134 S.Ct. at 1408. It is also informed by the congressional choice in the federal sentencing scheme to honor each state’s choice as to how to define its own crimes, through statutory text and judicial decision.
As we see it, this case turns on the unique nature of § 922(g)(9). That section is meant to ensure that individuals who engage in the “seemingly minor act[s]” that actually constitute domestic violence, like squeezing and shoving, may not possess a firearm. Castleman, 134 S.Ct. at 1412. This range of predicate acts is broader than that found in other federal prohibitions involving the use of physical force. Applying the teachings of Castle-man, we find that Maine’s definition of reckless assault fits within § 922(g)(9).
We affirm the denial of the motion to dismiss the indictment and information here. That means the conditional guilty pleas the defendants entered are valid and their sentences stand. The question is close and we rule narrowly.
I.
A. Statutory Background
As the Supreme Court observed in Cas- ■ tleman, 18 U.S.C. § 922(g)(9) was enacted to close a loophole. “While felons had long been barred from possessing guns, many perpetrators of domestic violence are convicted only of misdemeanors.”. Castleman, 134 S.Ct. at 1409. No ban prevented those domestic abusers from possessing firearms, yet there is a “sobering” connection between domestic violence and homicide. Id. The “manifest purpose” of § 922(g)(9), the Lautenberg Amendment to the Gun Control Act of 1968, was to remedy the “potentially deadly combination” of “[fjire-arms and domestic strife.” United States v. Hayes, 555 U.S. 415, 426-27, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009).
Under § 922(g)(9), it is against federal law for any person “who has been convicted in any court of a misdemeanor crime of domestic violence” to “possess in or affecting commerce[] any firearm or ammunition.” In turn, a “misdemeanor crime of domestic violence” is defined in § 921(a)(33)(A) as an offense that (1) is a misdemeanor under federal, state, or tribal law, and (2) “has, as an element, the use or attempted use of physical force ... committed by a current or former spouse, parent, or guardian of the victim” or by a person in a similar domestic relationship with the victim..
The predicate offenses in these cases are convictions under Maine assault statutes. *178 Me.Rev.Stat. Ann. tit. 17-A, §§ 207(1)(A), 207-A(l)(A). Under Maine law, a “person is guilty of assault if[ t]he person intentionally, knowingly or recklessly causes bodily injury or offensive physical contact to another person.” Id. § 207(1)(A). A violation of § 207 constitutes misdemeanor domestic violence assault if the “victim is a family or household member.” Id. § 207-A(1)(A).
Maihe law explains that “[a] person acts recklessly with respect to a result of the person’s conduct when the person consciously disregards a risk that the person’s conduct will cause such a result.” Id. § 35(3)(A). The statute goes on to give more meat to the “conscious disregard” definition. It refers to disregard of a risk, “when viewed in light of the nature and purpose of the person’s conduct and the circumstances known to that person,” that “involve[s] a gross deviation from the standard of conduct that a reasonable and prudent person would observe in the same situation.” Id. § 35(3)(C).
B. Facts
William E. Armstrong III was convicted in 2002 and 2008 of assaulting his wife in violation of Maine’s misdemeanor assault statutes, Me.Rev.Stat. Ann. tit. 17-A §§ 207(1)(A), 207-A(l)(A). In May 2010, twenty-nine months after the last domestic assault conviction, the Maine State Police searched the Armstrong residence for drug paraphernalia and marijuana. They discovered six firearms and ammunition. The police notified the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), which executed a search. That search uncovered only ammunition, but Armstrong later explained that he had arranged for a friend to remove the guns. ATF agents observed the guns at the friend’s home.
Armstrong was arrested and federally charged with being a prohibited person in possession of a firearm, in violation of § 922(g)(9). The indictment listed Armstrong’s 2008 domestic violence assault conviction as the predicate offense.
Stephen L. Voisine was convicted in 2003 and 2005 of assaulting a woman with whom he was in a domestic relationship, in violation of Maine’s assault statute. In 2009, acting on an anonymous tip, state and local law enforcement officials arrested Voisine on the federal misdemeanor charge of killing a bald eagle in violation of 16 U.S.C. § 668(a). When conducting a background check, they discovered his 2003 misdemeanor simple assault. As Voi-sine had turned a rifle over to the police during the investigation, the criminal information charged him with violating § 922(g)(9) as well as § 668(a).
C. Procedural History
Both Armstrong and Voisine moved to dismiss, arguing that their indictment and information did not charge a federal offense and that § 922(g)(9) violated the Constitution. The district court denied the motions, and both defendants entered guilty pleas conditioned on the right to appeal the district court’s decision.[1]
We consolidated Armstrong and Voi-sine’s cases. In a January 18, 2013 opinion, we affirmed the district court’s decisions. Armstrong, 706 F.3d at 1; see Voisine, 495 Fed.Appx. at 102 (incorporating the reasoning from Armstrong as *179 there were “no pertinent factual differences” distinguishing the two cases). The defendants had argued that a misdemean- or assault on the basis of offensive physical contact, as opposed to one causing bodily injury, is not a “use of physical force,” and, concordantly, not a “misdemeanor crime of domestic violence.” Relying on United States v. Booker, 644 F.3d 12 (1st Cir.2011), and United States v. Nason, 269 F.3d 10 (1st Cir.2001), we held that § 922(g)(9) did not distinguish between violent and nonviolent convictions, and the statute included the offensive physical contact portion of the Maine statute within its definition of “physical force.” Armstrong, 706 F.3d at 6; Voisine, 495 Fed.Appx. at 101-02.
Second, the defendants argued that § 922(g)(9) violated the Second Amendment as applied to them. This argument was foreclosed by Booker, which denied an identical argument framed as a facial challenge. 644 F.3d at 22-26; see Armstrong, 706 F.3d at 7-8; Voisine, 495 Fed.Appx. at 101.
The defendants petitioned for certiorari. On March 31, 2014, the Supreme Court granted their' petitions, vacated the judgments, and remanded “for further consideration in light of United States v. Castle-man.” Armstrong, v. United States, — U.S. —-, 134 S.Ct. 1759, 188 L.Ed.2d 590 (2014) (Mem.). In Castleman, the Court had addressed the issue of whether the phrase “use of physical force” in § 921(a)(33)(A) required violence or could be satisfied by offensive touching. That issue had been the source of a circuit split. Castleman resolved the question in agreement with Nason, holding that “Congress incorporated the common-law meaning of ‘force’ — namely, offensive touching — in § 921(a)(33)(A)’s definition of a ‘misdemeanor crime of domestic violence.’ ” Cas-tleman, 134 S.Ct. at 1410. The Supreme Court left open whether a conviction with the mens rea of recklessness could serve as a § 922(g)(9) predicate. Id. at 1414. In footnote 8, the Court stated, “the Courts of Appeals have almost uniformly held that recklessness is not sufficient,” and listed ten cases.[2] Id. at 1414 n. 8. It then added, “But see United States v. Booker, 644 F.3d 12, 19-20 (C.A.1 2011).” Id. The footnote did not say Booker was wrong. It gave no further definition of recklessness. Nor did it account for the differences in the statutory sections being interpreted in the other cases cited.
This case comes to us following the Supreme Court’s remand.
II.
In construing § 922(g)(9)’s applicability to a given case, we use the “categorical approach.” Under that approach the elements of the predicate offense (here, the Maine assault statute) must be identical to or categorically within the description of the subsequent provision (here, § 922(g)(9)). See Castleman, 134 S.Ct. at 1413. Where, as here, the predicate statute is “divisible” into crimes with alternative sets of elements, we may consider whether the elements under which the defendant was convicted are still within the *180 subsequent provision, an inquiry known as the “modified categorical approach.” Id. at 1414. The government concedes that the record here of the state proceedings is too sparse to “discern under which prong of Maine’s statute” the defendants were convicted, and they urge us against “resort[ing] to the modified categorical approach.” For us to affirm, we must find that the Maine statute — including the reckless acts it prohibits — categorically fits within § 922(g)(9).
The defendants frame the issue as whether a reckless act can constitute a “use of physical force” and rely on cases interpreting statutes other than § 922(g)(9). We do not agree that is the proper way to frame the question. That framing is predicated on the notion that particular statutory language must be interpreted identically in different sections across the U.S.Code. To the contrary, context matters, as the Supreme Court demonstrated in Castleman itself. 134 S.Ct. at 1410-12. The question is whether Maine’s definition of reeWessness fits within § 921(a)(33)(A)’s phrase “use of physical, force.” Section 921(a)(33)(A) is a provision crafted in the unique context of domestic violence, and it should be so interpreted. Castleman, 134 S.Ct. at 1410-12 & n. 4; Booker, 644 F.3d at 18-21.
This reframing of the question clarifies our approach to the two arguments raised by the defendants: that Castleman footnote 8 decides this case, and that Castle-man’s analysis of § 921(a)(33)(A) undermines our prior decisions. Castleman’s emphasis on context reinforces, rather than undermines, our earlier decision.
A. Castleman Footnote 8
The defendants read too much into Cas-tleman footnote 8, which expressly does not resolve the question before us. Nor is their argument made by reference to the cases cited for contrast in the footnote. Each of those cases[3] construes a different *181 statutory definition, and all but one arose in a different context.
Footnote 8 begins by describing the issue as an open question, with a citation to Leocal v. Ashcroft, 543 U.S. 1, 13, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). In Leocal, the Supreme Court interpreted 18 U.S.C. § 16(a), the definition of the term “crime of violence.” 543 U.S. at 8-10, 125 S.Ct. 377. Such a crime requires “use of physical force,” and Leocal held that the term “use” suggests a mens rea higher than negligence, but it withheld judgment on whether recklessness is sufficient, Castleman, 134 S.Ct. at 1414 n. 8; Booker, 644 F.3d at 19-20.
Considering context, section 16(a) is not ■analogous to the section which concerns us, § 922(g)(9). To begin, § 16(a) prohibits ‘use of physical force against the person or property of another,’ language crucial to the Supreme Court’s holding in Leocal but absent from the definition at issue here. See Leocal, 543 U.S. at 8-10. Castleman itself distinguished the term “use of force” in § 16(a), a provision for undifferentiated violent crimes, from the term “use of physical force” in § 922(g)(9)’s domestic violence provision. “Domestic violence” is a “term of art” that “encompasses a range of force broader than that which constitutes ‘violence’ simplieiter,” including “acts that might not constitute ‘violence’ in a non-domestic context.” Castleman, 134 S.Ct. at 1411 & n. 4. A “crime of violence,” by contrast, “suggests a category of violent, active crimes.” Id. at 1411 n. 4 (quoting Johnson, 559 U.S. at 140, 130 S.Ct. 1265) (internal quotation mark omitted). As the Supreme Court explained, a “ ‘squeeze of the arm [that] causes a bruise’ ” is “hard to describe as ... ‘violence’ ” within the meaning of § 16, but “easy to describe as ‘domestic violence’ ” within the meaning of § 922(g)(9). Id. at 1412 (alterations in original) (quoting Flores v. Ashcroft, 350 F.3d 666, 670 (7th Cir.2003)) (internal quotation marks omitted).
Unsurprisingly, the drafting history of § 922(g)(9) indicates that “Congress expressly rejected” the § 16(a) definition, instead developing the term “misdemeanor crime of violence” that was “‘probably broader’ than the definition” in § 16. Booker, 644 F.3d at 19 (citing a statement by Sen. Lautenberg). And where Congress wanted to define a domestic violence crime as a § 16 crime of violence occurring in the domestic context, it has done so— even in the same legislation that contained the Lautenberg Amendment. See, e.g., 8 U.S.C. § 1227(a)(2)(E). “That it did not do so here suggests, if anything, that it did not mean to.” Castleman, 134 S.Ct. at 1412 n. 6.
The only case cited in Castleman footnote 8 from the domestic violence context is one in which Congress elected to define the crime with reference to § 16. In Fernandez-Ruiz v. Gonzales, the Ninth Circuit considered whether a reckless misdemeanor could serve as a predicate “crime of domestic violence.” 466 F.3d 1121, 1124 (9th Cir.2006) (en banc) (citing 8 U.S.C. § 1227(a)(2)(E)©). Unlike § 922(g)(9), however, the relevant statute in Feman-dez-Ruiz defined “crime of domestic violence” as a “crime of violence” (referencing § 16) committed against someone in a domestic relationship with the perpetrator. Id. at 1124-25. The Ninth Circuit accordingly conducted a § 16 analysis, applying Leocal and cases from other circuits to reach its conclusion. Id. at 1127-32. But even that result did not follow so obviously from Leocal, as four judges dissented em- *182 pbaswing the differences between domestic violence and other contexts. Id. at 1136 (Wardlaw, J., dissenting).
On remand of this case to us, the defendants’ brief adds to the cases in the footnote by citing two other § 922(g)(9) cases, not mentioned in Castleman, which they say directly conflict with Booker. We disagree. In United States v. White, 258 F.3d 374 (5th Cir.2001), the relevant predicate statute criminalized reckless “conduct that places another in imminent danger of serious bodily injury.” Id. at 381. The court found that the statute did not require a completed “use of physical force,” since it was satisfied by a risk of injury, and the statute extended beyond an “attempted use of force” because attempt liability requires specific intent rather than recklessness. Id. at 382-84. Rather than construing the phrase “use of physical force,” as Booker did, White relied on principles of attempt liability to rule out reckless predicate crimes.
In United States v. Howell, 531 F.3d 621 (8th Cir.2008), also added by the defendants, the predicate statute criminalized reckless “conduct which creates a grave risk of death or serious physical injury to another.” Id. at 624. The court found this provision to be a “catch-all provision applicable to innumerable factual situations,” so a completed “use of physical force” is not always or ordinarily present. Id.
Simply put, we are aware of no case-including the cases in Castleman footnote 8 — in conflict with Bookers holding that a reckless misdemeanor assault satisfies § 922(g)(9)’s particular definition of a “misdemeanor crime of domestic violence.” Rather, § 922(g)(9)’s unique context, as described in Castleman and supported by the legislative history, suggests that § 922(g)(9) should be interpreted more broadly than other provisions, including § 16.
B. Structure of Castleman
The defendants present a second argument, which is that Castleman’s analytical approach to the term “use of physical force” means the conduct of neither defendant here could meet that standard. Cas-tleman held that Congress intended to incorporate the common law meaning of “force” in § 921(a)(33)(A), the definitional provision for “misdemeanor crime of domestic violence.” 134 S.Ct. at 1410. “[AJbsent other indication, ‘Congress intends todncorporate the well-settled meaning of the common law terms it uses.’ ” Id. (quoting Sekhar v. United States, — U.S. -, 133 S.Ct. 2720, 2724, 186 L.Ed.2d 794 (2013)) (internal quotation mark omitted). As a result, the statutory term “physical force” is satisfied by “the degree of force that supports a common-law battery conviction.” Id. at 1413. The parties agree that, under Castleman, the term “use of physical force” also incorporates the common law mens rea for battery.
The parties approach this as a generalized question. They disagree about whether reckless acts could or could not constitute batteries at common law, and each side marshals support for its view. See, e.g., Johnson v. United States, 559 U.S. 133, 139, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010); Lynch v. Commonwealth, 131 Va. 762, 109 S.E. 427, 428 (1921); Commonwealth v. Hawkins, 157 Mass. 551, 32 N.E. 862, 863 (1893); 2 Wayne R. LaFave, Substantive Criminal Law § 16.2(c)(2); 3 William Blackstone, Commentaries *120.
We decline the parties’ invitation to define the mens rea of a common law battery independent of the interpretation Maine gives its own statute. Castleman explains that the term “use of physical force” includes “the type of conduct that supports a *183 common-law battery conviction.” 134 S.Ct. at 1411. Castleman also explains that Congress incorporated “the common-law meaning of ‘force.’ ” Id. at 1410. Cas-tleman holds that the term “use of physical force” includes both causing bodily injury and offensive contact. Defendants concede that reckless causation of bodily injury is a use of physical force. We see no reasoned argument that offensive physical contact does not similarly entail the use of force simply because it is inflicted recklessly as opposed to intentionally.
We follow the statutory scheme in evaluating whether a conviction under the Maine statute categorically counts as a “misdemeanor crime of domestic violence.”
1. The Scope of a “Misdemeanor Crime of Domestic Violence”
As Castleman explained, § 922(g)(9) is a statute with a particular purpose: to ensure that domestic abusers convicted of misdemeanors, in addition to felonies, are barred from possessing firearms. 134 S.Ct. at 1408-12. “[Bjecause perpetrators of domestic violence are ‘routinely prosecuted under generally applicable assault or battery laws,’ ” id. at 1411 (quoting Hayes, 555 U.S. at 427, 129 S.Ct. 1079), we think .Congress intended the firearm prohibition to apply to those convicted under typical misdemeanor assault or battery statutes. See id. at 1411, 1413.' That encompasses assault statutes for those states that allow conviction with a mens rea of recklessness where recklessness is defined as including a degree of intentionality. A victim of domestic violence often encounters the perpetrator again, and a broader reading of § 922(g)(9)’s mens rea requirement better ensures that a perpetrator convicted of domestic assault is unable to use a gun in a subsequent domestic assault. If Congress had wanted to impose a higher mens rea, it could have done so explicitly, as it did in the immediately preceding section of the bill that established § 922(g)(9). Booker, 644 F.3d at 18 & n. 5.
This view is confirmed by the legislative history of § 922(g)(9). Senator Lauten-berg explained that § 922(g)(9) was a broad prohibition covering “any person convicted of domestic violence,” without reference to a particular mental state. 142 Cong. Rec. S10377-01 (1996). Another senator made statements to the same effect. See id. Additionally, Senator Lau-tenberg described the law’s application to scenarios without clear intent, in which domestic arguments “get out of control,” “the anger will get physical,” and one partner will commit assault “almost without knowing what he is doing.” 142 Cong. Rec. S11872-01 (Sept. 30, 1996). Such conduct may not be “knowing,” but it nonetheless constitutes a “use” of physical force — whether it causes offensive contact or bodily harm.
2. Maine’s Definition of “Recklessness ”
Whatever the common law meaning of battery as to recklessness, Maine characterizes recklessness as a mens rea involving a substantial amount of deliberateness and intent. The statutory definition requires that a person “consciously disregard[ ] a risk that the person’s conduct will cause” the result. Me.Rev.Stat. Ann. tit. 17-A § 35(3)(A) (emphasis added). The disregard of the risk is “viewed in light of the nature and purpose of the person’s conduct and the circumstances known to the person.” Id. § 35(3)(C) (emphasis added). Further, it must “involve a gross deviation” from the standard of reasonable care. Id.
Maine’s definition of “recklessly,” like its definition of “knowingly,” includes an element of intentionality and specificity. To act “knowingly” in Maine, the person must be aware that the result is “practically *184 certain” to occur. Id. § 35(2)(a). Maine’s definitions of knowingly as contrasted with recklessly differ primarily in their description of the degree of the person’s awareness of the likelihood that the result will occur. Cf. 2 LaFave, Substantive Criminal Law, § 5.4(f). To act knowingly and recklessly, but not negligently, the person must be aware of the risk: the recklessness definition requires reference to “the nature and purpose of the person’s conduct and the circumstances known to the person.” Maine’s Supreme Judicial Court has made clear that the recklessness inquiry focuses on the person’s “subjective state of mind.” Stein v. Me. Criminal Justice Acad., 95 A.3d 612, 618 (Me.2014) (quoting State v. Goodall, 407 A.2d 268, 280 (Me. 1979)) (internal quotation mark omitted); see State v. Hicks, 495 A.2d 765, 771 (Me. 1985) (comparing the subjective test for recklessness with the objective test for negligence).
For example, the Maine Supreme Judicial Court has affirmed a conviction for “act[ing] recklessly when [the defendant] shot a powerful handgun into the woods in a residential area and in the direction of his next-door neighbor’s home, knowing where it was located.” State v. Kline, 66 A.3d 581, 584 (Me.2013) (citing Me.Rev. Stat. Ann. tit. 17-Á § 35). It also affirmed a conviction for reckless conduct with the use of a dangerous weapon when the defendant “drove his van alongside the victim’s vehicle, remaining there ... [,] used his van to push the victim’s vehicle into heavy oncoming traffic, and made contact with that vehicle at least once.” State v. York, 899 A.2d 780, 783 (Me.2006).
Maine’s definition of recklessness includes a volitional component. In this, it is like other states. See Fernandez-Ruiz, 466 F.3d at 1141 (Wardlaw, J., dissenting) (collecting cases). Notwithstanding Leo-cal, some judges found that even § 16 encompassed reckless predicate convictions. In Femandez-Ruiz, four dissenting judges of the Ninth Circuit observed that Arizona’s definition of recklessness, like Maine’s, requires that the person “be aware of a substantial and unjustifiable risk and affirmatively choose to act notwithstanding that risk.” Id. Recklessness includes an “volitional, active decision, which necessarily involves ‘a higher degree of intent than negligent or merely accidental conduct.’ ” Id. (quoting Leocal, 543 U.S. at 9, 125 S.Ct. 377); accord Bejarano-Urrutia v. Gonzales, 413 F.3d 444, 449-50 (4th Cir.2005) (Niemeyer, J., dissenting) (“Unlike a person who accidentally injures another person, a person who acts recklessly in bringing about harm to another is aware of the nature of his conduct and thus can be said to be ‘actively employ[ing]’ the physical force that results in injury ‘against another.’ ” (alteration in original) (quoting Leocal, 543 U.S. at 9,125 S.Ct. 377)).
3. Categorical Comparison
We conclude that reckless assault in Maine is “use of physical force” within the meaning of a “misdemeanor crime of domestic violence.” As noted' above, § 922(g)(9) is meant to embrace those seemingly minor predicate acts, occurring sometimes in moments of passion, where the perpetrator consciously disregarded a risk in light of known circumstances. This often constitutes domestic violence. Reckless assaults in Maine fit that congressional intent for § 922(g)(9), including the paradigm of a domestic assault as described by Senator Lautenberg. As the dissenting judges on the Ninth Circuit, concerned with a different federal statute, explained:
Domestic abusers may be drunk or otherwise incapacitated when they commit their crimes, and they may plea bargain down from a felony to a misdemeanor or from a statute that requires a mens rea *185 of intentionality to one that can be satisfied by recklessness. But this does not alter the nature of domestic violence as a crime involving the use of force against someone in a domestic relationship ....
Fernandez-Ruiz, 466 F.3d at 1139 (Wardlaw, J., dissenting).
Defendants’ position assumes that a reckless act cannot be an act of domestic violence because it lacks volition. But that is not true. For example, suppose Maine convicts a husband for throwing a knife toward his wife, intending to instill fear rather than to cause physical injury, but actually striking her. The mens rea of the conviction would likely be recklessness: in light of the circumstances known to the husband, he consciously disregarded the risk of harm. Such a reckless assault can “subject one intimate partner to the other’s control,” Castleman, 134 S.Ct. at 1411, and is the type of conduct included in § 922(g)(9) even though the husband did not intend to cause bodily injury or offensive contact. Similarly, if Maine prosecutes and convicts a parent for assault for waving a lit cigarette near a child in anger, the cigarette touching and burning the child, that conviction in context may well be an act of domestic violence.
The defendants focus their analysis on assaults involving reckless causation of offensive physical contact, rather than bodily injury. We do not see why that distinction is material to the analysis here. The issue is whether § 922(g)(9) encompasses reckless uses of force, regardless of whether the use of force results in bodily injury or an offensive physical contact. If the husband’s knife grazes his wife or harms her grievously, it is an assault all the same.[4]
As a practical matter, it is hard to identify a ease of reckless assault in the domestic context that Maine would prosecute but that Congress did not intend to serve as a § 922(g)(9) predicate. See James v. United States, 550 U.S. 192, 208, 127 S.Ct. 1586, 167.L.Ed.2d 532 (2007) (explaining that the categorical approach focuses on “the ordinary case,” not “every conceivable factual offense covered by a statute”); United States v. Fish, 758 F.3d 1, 6 (1st Cir.2014) (“[I]n assessing whether the elements of the candidate proposed as a predicate crime are overbroad, we need not consider fanciful, hypothetical scenarios.”). Maine will not prosecute all “[mjinor uses of force.” Castleman, 134 S.Ct. at 1412; see Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir.2003) (Evans, J., concurring) (“[Pjeople don’t get charged criminally for expending a newton of force against victims. [The defendant] actually beat his wife.... ”). But some grabbing and slapping “accumulat[es] ... over time,” “subjecting] one intimate partner to the other’s control.” Castleman, 134 S.Ct. at 1412. When it eventually “draws the attention of authorities and leads to a successful prosecution for a misdemeanor offense, it does not offend common sense or the English language to characterize the resulting conviction as a ‘misdemeanor crime of domestic violence.’ ” Id. After all, not all assaults will serve as § 922(g)(9) predicates, but only those occurring in the domestic context.
*186 To be clear, we do not decide that, on the spectrum from negligence to intentional acts, recklessness is always closer to the latter. Cf. Fernandez-Ruiz, 466 F.3d at 1141-42 (Wardlaw, J., dissenting) (“Recklessness is a distinct mens rea, which lies closer to intentionality than to negligence.”). We also do not decide that recklessness in the abstract is always enough to satisfy § 922(g)(9).[5] We decide only that the Maine definition is sufficiently volitional that it falls within the definition of “use of physical force” applied in § 922(g)(9). See Booker, 644 F.3d at 18.
C. Our Recent Decision in Carter Does Not Help the Defendants
In United States v. Carter, 752 F.3d 8 (1st Cir.2014), we encountered similar facts to this case. We remanded for.the-district court to determine whether the defendant had indeed been- convicted of a reckless assault. The opinion noted that Castle-man “casts doubt” upon Booker, but it explicitly did “not decide” the question before this court. Id. at 18 & n. 11. Now, squarely presented with the issue and having reviewed Castleman, we resolve the question left open by Carter.

III.

The defendants make three constitutional arguments, none of which are successful.
First, the defendants renew their prior argument that § 922(g)(9) violates the Second Amendment as applied to them. They explicitly raise the argument only to preserve it, and for good reason: it is “foreclosed by binding precedent in this circuit.” Carter, 752 F.3d at 13; see Armstrong, 706 F.3d at 7-8; Booker, 644 F.3d at 22-26.
Second, the defendants offer a “gloss” on their earlier argument. They suggest that Castleman held that the link between non-violent misdemeanors and domestic violence involving firearms is extremely tenuous, and they argue that such a tenuous link cannot support the law’s constitutionality. To the contrary, Castleman explained that the link between non-violent misdemeanors and domestic violence involving firearms is “sobering,” and hardly tenuous. 134 S.Ct. at 1409.
The defendants also raise an argument outside the scope of the Supreme Court’s remand. They claim that § 922(g)(9) violates the Fifth Amendment, Sixth Amendment, and Ex Post Facto Clause because the determination that the predicate crime involves domestic violence is made at the time of the § 922(g)(9) conviction, rather than at the time of the predicate conviction.
We have discretion to reexamine issues beyond the scope of the Supreme Court’s specific remand order when “necessary to avoid extreme injustice.” United States v. Burnette, 423 F.3d 22, 25 n. 6 (1st Cir.2005) (quoting United States v. Estevez, 419 F.3d 77, 82 (1st Cir.2005)) (internal quotation mark omitted). But “[tjhere is no injustice in refusing to reexamine a • carefully considered decision based on the same arguments that we have already rejected.” Id. at 25 n. 6. The Supreme Court has already rejected arguments very similar to the defendants’ in *187 United States v. Hayes, 555 U.S. 415, 421, 129 S.Ct. 1079, 172 L.Ed.2d 816 (2009).
The defendants argue that. Hayes was implicitly overruled by a recent Supreme Court decision, Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 186 L.Ed.2d 438 (2013). Hayes held that the determination that an earlier conviction involved a domestic relationship is an element of § 922(g)(9), not the predicate conviction. 555 U.S. at 418,129 S.Ct. 1079. Descamps limited the extent to which courts can look at the facts underlying the predicate conviction to determine whether they fit the subsequent conviction, under the modified categorical approach. 133 S.Ct. at 2281-82. The defendants -argue that, as in Des-camps, the subsequent court may not evaluate the predicate conviction to determine a fact about it — here, whether it involved a domestic relationship.
We reject this argument. Whether the predicate conviction involved a domestic relationship is not a fact about the predicate conviction discerned through application of the modified categorical approach, in violation of Descamps. It is an element proved anew in the § 922(g)(9) proceeding.
IV.
The question before us is a narrow one. We are asked to decide whether a conviction for reckless assault against a person in a domestic relationship in Maine constitutes a federal “misdemeanor crime of domestic violence.” Congress in passing the Lautenberg Amendment recognized that guns and domestic violence are a lethal combination, and singled out firearm possession by those convicted of domestic violence offenses from firearm possession in other contexts. Castleman recognizes as-much.
For the reasons stated above, we affirm the judgments of guilt.

So ordered.

. In February 2012, Armstrong was sentenced to three years of probation and a fine and special assessment totaling $2,600. Also in February 2012, Voisine was sentenced to a year and a day imprisonment on the § 922(g)(9) charge with two years supervised release, concurrent with nine months imprisonment and one year supervised release on the § 668(a) charge, and $125 in special assessments.

. United. States v. Palomino Garcia, 606 F.3d 1317, 1335-36 (11th Cir.2010); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 560 (7th Cir. 2008); United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir.2008); United States v. Torres-Villalobos, 487 F.3d 607, 615-16 (8th Cir.2007); United States v. Portela, 469 F.3d 496, 499 (6th Cir.2006); Fernandez-Ruiz v. Gonzales, 466 F.3d 1121, 1127-32 (9th Cir. 2006) (en banc); Garcia v. Gonzales, 455 F.3d 465, 468-69 (4th Cir.2006); Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3d Cir.2005) (Alito, J.); Jobson v. Ashcroft, 326 F.3d 367, 373 (2d Cir.2003); United States v. Chapa-Garza, 243 F.3d 921, 926 (5th Cir.2001).

. All but one of the ten cases cited in Castle-man footnote 8 as deciding the § 922(g)(9) mens rea issue in fact considered other statutes in other contexts and followed the reasoning of Leocal v. Ashcroft, 543 U.S. 1, 13, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). Six cases analyzed 18 U.S.C. § 16. In Oyebanji v. Gonzales, 418 F.3d 260, 263-65 (3d Cir.2005) (Alito, J.), the Third Circuit read Leocal to apply to § 16(b), which offered an alternative definition of “crime of violence” to § 16(a), and decided that reckless crimes cannot be crimes of violence under that section. Three other cases from the footnote did the same. See Garcia v. Gonzales, 455 F.3d 465, 467-69 (4th Cir.2006) (interpreting § 16(b), as referenced in an immigration statute); Jimenez-Gonzalez v. Mukasey, 548 F.3d 557, 559-62 (7th Cir.2008) (same); United States v. Torres-Villalobos, 487 F.3d 607, 614-17 (8th Cir. 2007) (same). Two more interpreted the same provision, but without relying on Leocal, which had yet to be decided. See Jobson v. Ashcroft, 326 F.3d 367, 373-74 (2d Cir.2003); United States v. Chapa-Garza, 243 F.3d 921, 926-27 (5th Cir.2001). All of these cases interpreted the term "crime of violence” as part of an aggravated felony statute, and Castle-man is clear that the interpretive rules governing felonies do not apply to misdemeanor crimes of domestic violence. 134 S.Ct. at 1411.
Three of the remaining four cases interpreted the term "use of physical force” in the context of a Sentencing Guidelines provision imposing an enhancement for defendants who were deported after committing a felony "crime of violence,” U.S. Sentencing Guidelines Manual § 2L1.2(b)(l)(A). Each of those cases analyzed the provision by analogizing to § 16 and applying Leocal. For example, in United States v. Palomino Garcia, the Eleventh Circuit explained that both § 16 and the Guidelines provision define the phrase "crime of violence,” and they are "almost identically, worded.” 606 F.3d 1317, 1335 (11th Cir. 2010). It then cited Leocal and the other § 16 cases mentioned above to conclude that a "use of physical force” cannot be reckless. Id. at 1335-36; see also United States v. Portela, 469 F.3d 496, 498-99 (6th Cir.2006); United States v. Zuniga-Soto, 527 F.3d 1110, 1124 (10th Cir.2008).
*181 Even if § 16 were analogous to § 922(g)(9), that would not resolve the matter. The Third Circuit has explained that some reckless convictions can serve as predicates for § 16 offenses, depending on the nature of the recklessness. Aguilar v. Att’y Gen., 663 F.3d 692, 698-700 (3d Cir.2011); cf. United States v. Espinoza, 733 F.3d 568, 572-74 (5th Cir. 2013) (allowing a reckless conviction to be a predicate for a violent felony under the Armed Career Criminal Act).

. The dissent wrongly relies on our decision in United States v. Bayes, 210 F.3d 64 (1st Cir.2000), for the proposition the federal assault statute requires deliberate action. Id. at 69 (citing 18 U.S.C. § 113(a)(5)). Bayes says that “it is sufficient to show the defendant deliberately touched another in a patently offensive manner without justification or excuse.” Id. In deciding that the statute did not require specific intent, Bayes did not pass on whether recklessness would satisfy the statute. Further, the dissent relies on the rule of lenity, an argument not made by the defendants.

. As recognized at 2 LaFave, Substantive. Criminal Law, § 5.4 n. 6, "usage of the term [recklessness] has not been consistent.” See, e.g., United States v. Meeks, 664 F.3d 1067, 1070-71 & n. 2 (6th Cir.2012) (explaining that "recklessness” in Kentucky is a lower standard than "being aware of and consciously disregarding a substantial and unjustifiable risk”). As the dissent observes, while the Model Penal Code definition is similar to Maine's (though not identical), Puerto Rico's definition — until the new statute is in effect-— has language quite different from the Maine statute.