# United States Court of Appeals
## For the First Circuit

No. 17-1778

UNITED STATES OF AMERICA,

Appellee,

v.

ALBERTO SOSTRE-CINTRÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Michael R. Hasse for appellant.
B. Kathryn Debrason, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

December 20, 2018

**KAYATTA**, **Circuit Judge**.    A federal jury convicted Alberto Sostre-Cintrón of conspiring to defraud the United States and stealing government property in violation of 18 U.S.C. §§ 371, 641 after finding that he falsely claimed eligibility for Social Security benefits and received nearly $100,000 in disability insurance disbursements to which he was not entitled.    On appeal, Sostre challenges the sufficiency of the evidence supporting his convictions and the procedural reasonableness of his sentence. Because we find that there was ample evidence from which a jury could have reasonably determined that Sostre was a knowing and willing participant in this fraudulent scheme and because we discern no error in the district judge's sentencing rationale, we affirm Sostre's convictions and sentence.

## I.  Background

We recount the facts pertinent to Sostre's appeal "in the light most favorable to the verdict."  United States v. Díaz-Rosado, 857 F.3d 116, 121 (1st Cir. 2017).

A psychiatrist named Dr. Luis Escabí-Pérez became well acquainted with the Social Security disability insurance benefits ("DIB") application process after working as a Social Security Administration ("SSA") patient evaluator for over thirty years. After retiring from the SSA, Escabí hatched a plan to coach patients through the application process to guarantee the approval of their applications.  In return, Escabí's patients compensated

him and agreed to give him a kickback in the form of a portion of their back pay upon receipt of their first DIB check.

In order to qualify for DIB payments, an applicant must demonstrate that "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To enable his "patients" to appear to satisfy these requirements, Escabí back-dated documents, fabricated records of appointments that never occurred, reported false diagnoses and symptoms not experienced or reported by his patients, and instructed them on how to deceive SSA personnel during interviews.

Sostre met with Escabí for the first time on September 1, 2010, and visited his office on three subsequent occasions. At Sostre's first appointment, the two agreed to falsely state in Sostre's psychiatric medical report (to be submitted to the SSA as part of Sostre's DIB application) that Sostre had seen Escabí for medical treatment on a monthly basis since June 9, 2009. In the same report, Escabí also attributed a number of symptoms to Sostre that, according to Escabí, Sostre did not exhibit, including depression, anxiety, low self-esteem, and bad memory. Escabí provided a diagnosis of major depressive disorder though he did not believe that Sostre was depressed. Escabí also reported that

- 3 -

Sostre was homebound and had been unemployed since April 2009. However, Sostre admitted in an unrelated bankruptcy proceeding to working as a landscaper and gardener through at least 2011 and to earning $1,000 per month in this role. Sostre paid Escabí $500 for completing his SSA-DIB application and agreed to pay him $4,000 more upon receiving his benefits back pay.

Sostre also signed papers that he submitted to the SSA stating that he required assistance completing basic household tasks, such as preparing food, bathing, and managing his finances, and that he was unable to drive. And in a telephone interview with an SSA-claims representative, Sostre reiterated that he had been unable to work since April 2009 due to his depression and muscular pain and that Escabí had been treating him since June 2009. Based upon Sostre's representations under penalty of perjury and Escabí's report, the SSA awarded Sostre back pay in the amount of $19,278 and monthly disability payments of $1,071. The SSA also notified Sostre in writing of his obligation to report medical improvements or a return to work. In total, Sostre received $99,589 in disability benefits from 2011 through 2014.

In 2014, Officer Elliot Meléndez and SSA Agent Joel Ferris investigated Sostre. Meléndez testified to observing Sostre perform gardening services at another individual's residence, drive his vehicle, run errands, and socialize in his community. All the while, Sostre was supposedly homebound and

- 4 -

unable to work or drive according to the representations he had made to the SSA. In December 2014, the SSA stopped making payments to Sostre based upon Meléndez's and Ferris's investigation.

Subsequently, a federal grand jury indicted Sostre for conspiring to defraud the United States and theft of government property. A jury found him guilty on both counts. The district court sentenced Sostre to fifteen months' imprisonment with three years of supervised release and ordered Sostre to pay the government $99,589 in restitution. This appeal followed.

## II.

On appeal, Sostre argues that the government produced insufficient evidence to support his convictions and that his sentence was procedurally unreasonable. We address each challenge in turn and find both lacking.

## A.

Section 371 makes it a crime for at least two persons "to defraud the United States" so long as at least one conspirator "do[es] any act to effect the object of the conspiracy." 18 U.S.C. § 371. And section 641 makes it a felony to "embezzle[], steal[], purloin[], or knowingly convert[]" any "money" or "thing of value of the United States." Id. § 641. Both crimes require a defendant to have acted with intent: A conspiracy conviction requires that the government prove that the defendant "had both the intent to agree to commit a crime, and the intent that the crime be

- 5 -

completed," United States v. Castro-Davis, 612 F.3d 53, 60 (1st Cir. 2010), while a conviction under section 641 requires the government to prove that the defendant "acted with the specific intent to steal a thing of value from the United States," United States v. González-Martínez, 825 F.3d 51, 55 (1st Cir. 2016).

Sostre argues that the government failed to garner sufficient evidence to prove the intent elements of these crimes. Whether Sostre preserved in the district court his present challenge to the sufficiency of the evidence is unclear. Nevertheless, because the evidence is plainly sufficient under any standard of review, we will simply assume that Sostre fully preserved his sufficiency objections. Escabí's testimony, which we must assume the jury believed, painted Sostre as an informed and willing participant, intent on securing disability benefits based on falsehoods. Sostre's payment to Escabí for his submission of the application easily substantiates the existence of their agreement.

This was not a case in which the false statements known to Sostre consisted only of medical or legal conclusions about which Sostre could claim ignorance regarding their falsity. He knew when and how many times he saw Escabí. He certainly knew -- and repeatedly falsified -- his employment history and symptoms. Nor is it of any moment that the government did not affirmatively prove Sostre's lack of depression when he sought treatment from

Escabí.  Indeed, Sostre's assertion that "there is no evidence of record that [Escabí] ever tested [Sostre] in any way" undermines his contention that he could have believed his application for SSA-DIB benefits to be legitimate.  Cumulatively, this evidence was well beyond sufficient to show that Sostre was a witting conspirator intent on obtaining SSA benefits through fraud.

**B.**

Sostre also takes issue with his sentence (especially the three-year duration of his supervised-release term).  Specifically, Sostre argues that the district judge erred by giving insufficient consideration to Sostre's personal characteristics and to -- what he claims was -- his "limited role" in the conspiracy in weighing the 18 U.S.C. § 3553(a) sentencing factors, by inadequately explaining the rationale behind his incarceration term, and by offering "no reason" for imposing a top-of-the-range supervised-release term.

Notwithstanding the completion of Sostre's imprisonment term, these challenges are not moot because his period of supervised release continues.  See United States v. Carter, 860 F.3d 39, 43 (1st Cir. 2017).  And, unlike the challenge we deemed moot in United States v. Suárez-Reyes, No. 17-1849, 2018 WL 6583865, at *2 (1st Cir. Dec. 14, 2018), the defendant in this case does "profess to have suffered . . . collateral consequences attributable to the [district court's] alleged sentencing errors":

- 7 -

Sostre specifically argues that the purported inadequacies in the district judge's sentencing rationale resulted in an "unreasonably harsh" and "unexplained" supervised-release term. Accordingly, Sostre's injury could still be redressed were he to prevail in this appeal. See United States v. Serunjogi, 767 F.3d 132, 141–42 (1st Cir. 2014).

Sostre did not object in the trial court to the sentence, so our review is limited to plain error. United States v. Ruiz-Huertas, 792 F.3d 223, 226 (1st Cir. 2015). The district judge began by carefully reviewing Sostre's total offense level and guideline imprisonment range using the United States Sentencing Guidelines Manual. He acknowledged that the manual is advisory, and Sostre does not maintain that the judge calculated his guideline range incorrectly. Next, the district judge stated that he had considered the "sentencing factors as set forth in 18 U.S.C. 3553(a)." "Such a statement 'is entitled to some weight.'" United States v. Clogston, 662 F.3d 588, 592 (1st Cir. 2011) (quoting United States v. Dávila-González, 595 F.3d 42, 49 (1st Cir. 2010)).

The court then recounted the personal characteristics most salient to Sostre's case, including his family status, education, employment, medical history, and lack of substance abuse and a criminal record. Finally, the judge considered "the elements of the offense, [Sostre's] participation in the same, the need to promote respect for the law and protect the public from

further crimes by the defendant, as well as . . . the issues of deterrence and punishment." Factoring together all of these considerations, the court determined that a fifteen-month imprisonment and a three-year supervised-release term would be "just and not greater than necessary."

We discern no error, plain or otherwise: The district court's imposition of Sostre's sentence was procedurally sound. The district judge considered all of the relevant section 3553 factors and, properly exercising his discretion, weighed them as he saw appropriate. See United States v. Alejandro-Rosado, 878 F.3d 435, 439 (1st Cir. 2017) ("Though the district court's consideration was unfavorable to the defendant, the fact that it weighed some factors more heavily than others does not amount to procedural error."). It is also of no significance that the district judge did not separately explain his rationale in imposing a relatively long supervised-release term. "'[N]o part of § 3553(c) requires the district court to bifurcate its consideration, discussion, and evaluation of the § 3553(a) sentencing factors' whenever the court chooses to impose a sentence that includes both an imprisonment component and a supervised release component." United States v. Domínguez-Figueroa, 866 F.3d 481, 486 (1st Cir. 2017) (quoting United States v. Bloch, 825 F.3d 862, 869 (7th Cir. 2016)). Considering Sostre's personal circumstances, including his lack of criminal history and his role

in the offense, the district judge deemed a bottom-of-the-guidelines imprisonment term and a top-of-the-guidelines supervised-release term to be appropriate. Far from being arbitrary, this compromise ensured that Sostre spent as little time in jail as was necessary while protecting the public from possible future criminal activity. Therefore, we affirm the district judge's sentence.

## III.

For the foregoing reasons, we <u>affirm</u> Sostre's convictions and the district court's sentence.