# United States Court of Appeals
## For the First Circuit

No. 22-1354

UNITED STATES,

Appellee,

v.

CARLOS RUBÉN BOYRIE-LABOY,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Barron, Chief Judge,

Montecalvo and Rikelman, Circuit Judges.

German A. Rieckehoff for appellant.
Maarja T. Luhtaru, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, were on brief,
for appellee.

April 22, 2024

**MONTECALVO, Circuit Judge.** Carlos Rubén Boyrie-Laboy appeals his convictions, after a jury trial, under 18 U.S.C. §§ 1951, 371, and 641. Boyrie-Laboy contends that there is insufficient evidence to support the convictions. Boyrie-Laboy did not move for a judgment of acquittal under Federal Rule of Criminal Procedure 29 below; thus, his appeal can only be successful if affirming the convictions would result in a clear and gross injustice. Boyrie-Laboy does not meet this standard. Therefore, we affirm for the reasons stated below.

## I. Background

The following facts are drawn from the trial testimony. Boyrie-Laboy was a Puerto Rico Police officer in the Humacao Drugs Division. The division is responsible for searching for and seizing illegal weapons, drugs, and money related to drug trafficking, in addition to other contraband such as fireworks.

In May 2015, Officer Gabriel Maldonado-Martínez transferred to the Humacao Drugs Division and began working with Boyrie-Laboy. In July 2015, Maldonado-Martínez was part of a police surveillance team, which investigated a drug operation and subsequently arrested the individuals involved. As part of the drug operation, individuals would hide drugs and cash in an empty lot. When Maldonado-Martínez and another officer from the division were searching the empty lot for hidden drugs and cash, they found a purse and Maldonado-Martínez witnessed the other officer taking

cash from the purse for himself. Maldonado-Martínez informed his lieutenant, and the two contacted the Federal Bureau of Investigation ("FBI"). Maldonado-Martínez subsequently began working as an undercover FBI informant to identify Puerto Rico Police officers who "were committing acts of corruption." While Maldonado-Martínez was working undercover, Boyrie-Laboy frequently said he did not trust Maldonado-Martínez because he believed Maldonado-Martínez "was going to arrest him." To gain the trust of his fellow officers, Maldonado-Martínez spent time with them and participated in illegal activities.

While Maldonado-Martínez was working with members of the Drugs Division, Boyrie-Laboy told Maldonado-Martínez that he enjoyed stealing fireworks at Christmastime. On December 21 and 29, 2015, Maldonado-Martínez participated in two thefts of fireworks with officers, including Boyrie-Laboy. Maldonado-Martínez reported these thefts to the FBI. In response, the FBI planned and executed two operations designed to catch the Humacao Drugs Division officers engaged in similar acts of corruption.

The first FBI operation was executed on December 29, 2016. For that operation, the FBI purchased fireworks that were not manufactured in Puerto Rico. FBI agents placed the fireworks and $7,895 in cash inside a house in Naguabo. Then Maldonado-Martínez told the officers who had participated in the

- 3 -

two prior firework thefts that he knew of a house containing fireworks stolen from Wal-Mart shipping containers.

Maldonado-Martínez drove to the house in Naguabo with Officers Boyrie-Laboy, Luis Rodríguez-García, and Miguel Conde-Vellón -- each wearing civilian clothes but carrying their police identification and firearms. At the house, the officers found and took the fireworks and cash. Boyrie-Laboy loaded some of the fireworks into the officers' car. While Boyrie-Laboy was later dividing the fireworks into equal shares amongst the group, he tested one by lighting it. He called the firework "a piece of trash" and told the others that he did not want his share. He then suggested going to another location to steal better quality fireworks.

The second FBI operation took place on June 15, 2017, at a house in Yabucoa. This time, the FBI bought electronics manufactured outside of Puerto Rico, including TVs, drones, tablets, and iPods, which they placed in the house along with $9,345 in cash. Maldonado-Martínez told the other officers that the electronics in the home "had been stolen from a specific department store" and were being stored before they would eventually be sold.

Maldonado-Martínez went to the house with Boyrie-Laboy and Quermie Márquez-Rivera, another officer from the Humacao Drugs Division. On the way to the house, the officers discussed what

they needed to do "when [they] got there, . . . specifically [Boyrie-Laboy] [said] that [they] needed to act like killers." When they arrived at the house, Boyrie-Laboy became suspicious and said something "didn't smell too good" when he noticed an individual in the house who had also been at the previous FBI operation in Naguabo. The officers took electronics and cash from the Yabucoa house, keeping some of the electronics and over $5,000 in cash for themselves and turning over the remainder of the electronics and cash as evidence. Boyrie-Laboy was not present when the other officers divided the money and electronics amongst the group. Boyrie-Laboy did not accept any money or electronics from the Yabucoa house, again saying that the operation "didn't smell good." Boyrie-Laboy continued to be suspicious of the circumstances surrounding the second operation. His suspicion prompted Boyrie-Laboy to say he did not trust Maldonado-Martínez and ask Maldonado-Martínez if he was going to arrest the other Humacao Drugs Division officers involved in the theft.

## II. Procedural History

On August 27, 2020, the government indicted Boyrie-Laboy and three other Humacao Drugs Division officers based on the activities described above.[1] Boyrie-Laboy was charged with six

---

[1] Boyrie-Laboy's co-defendants Luis Rodríguez-García, Miguel Conde-Vellón, and Quermie Márquez-Rivera each entered guilty pleas.

counts: conspiracy to commit robbery under 18 U.S.C. § 1951 (Counts 1 and 4), conspiracy to steal and convert government property under 18 U.S.C. § 371 (Counts 2 and 5), and theft and conversion of government property under 18 U.S.C. § 641 (Counts 3 and 6).

Boyrie-Laboy proceeded to a five-day jury trial. The jury heard testimony from Maldonado-Martínez and Boyrie-Laboy's co-conspirator Márquez-Rivera,[2] among other witnesses. During Boyrie-Laboy's trial, the prosecution presented video surveillance recordings and audio recordings Maldonado-Martínez created as part of his undercover work.

On the last day of trial, the court stated that: "After the government rests, we'll have the Rule 29 argument." When defense counsel stated that the defense was "not going to file [a] Rule 29 [motion] at th[at] moment," the court responded, explaining that "[i]f [defense counsel] d[id not] want to file it . . . [counsel would] have to [do] it later." Later that day when the defense rested, the court asked counsel: "Will you file a Rule 29 motion now . . . ?" Counsel said he was not going to file a motion "at th[at] time" either. In fact, at no point did Boyrie-Laboy's counsel move for judgment of acquittal under Federal Rule of Criminal Procedure 29.

---

[2] Márquez-Rivera agreed to cooperate with the government and testify in Boyrie-Laboy's trial as part of his plea agreement.

- 6 -

The jury found Boyrie-Laboy guilty on all counts. The defense did not make any post-trial motions challenging the verdict. After judgment entered, Boyrie-Laboy timely appealed the convictions.

### III. Discussion

Boyrie-Laboy now challenges the sufficiency of the evidence as to all six counts. He advances four arguments: First, he argues there was insufficient evidence to show that he conspired to commit a robbery that would affect interstate commerce in violation of § 1951. Second, he argues the prosecution failed to show that, under § 641, the stolen goods belonged to the United States. Third, he argues the evidence did not demonstrate that he had the requisite intent to commit the crimes of conviction. Fourth and finally, he argues that the video and audio recordings the prosecution presented at trial were of such poor quality that they had no evidentiary value.

Under Federal Rule of Criminal Procedure 29, a defendant may move for "a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction" either after the government closes its case-in-chief or after the close of all evidence. Fed. R. Crim. P. 29(a). A defendant may also make a motion within fourteen days after the jury enters a guilty verdict or after the court discharges the jury, whichever is later. Fed. R. Crim. P. 29(c). Boyrie-Laboy's counsel explicitly declined the

opportunity to move for a judgment of acquittal twice: after the prosecution rested its case and after he rested his own case. Defense counsel also did not make a post-trial motion for judgment of acquittal.

When a defendant fails to make a motion under Federal Rule of Criminal Procedure 29, the defendant forfeits the customary de novo standard of review for sufficiency-of-the-evidence challenges. United States v. Vázquez-Rosario, 45 F.4th 565, 570 (1st Cir. 2022). In such a case, we may only act to prevent a clear and gross injustice. United States v. Hernández-Román, 981 F.3d 138, 143 (1st Cir. 2020). We review the evidence in the light most favorable to the verdict, id., keeping in mind that "there can be no 'clear and gross injustice' unless there has been such an 'egregious misapplication of legal principles' that reversal is required," United States v. Charriez-Rolón, 923 F.3d 45, 51 (1st Cir. 2019) (quoting United States v. Greenleaf, 692 F.2d 182, 186 (1st Cir. 1982)).

Although he conceded that the clear and gross injustice standard applied during oral argument, Boyrie-Laboy initially argued that his claims were subject to de novo review. This presents a problem: Boyrie-Laboy's briefing "does not mention the clear and gross injustice standard, let alone develop any argument to meet it." Id. at 52. The result of not briefing the standard that applies here is the waiver of his sufficiency arguments. See

id.; Vázquez-Rosario, 45 F.4th at 571. Even so, we consider whether the convictions present a clear and gross injustice. We conclude that they do not.

First, to challenge the convictions under § 1951 (the "Hobbs Act"), Boyrie-Laboy argues there is insufficient evidence to support a reasonable jury finding that his actions affected interstate commerce. The Hobbs Act prohibits "affect[ing] commerce . . . by robbery." 18 U.S.C. § 1951(a). The government need only show "a 'realistic probability of a de minimis effect on interstate commerce.'" United States v. Tkhilaishvili, 926 F.3d 1, 11 (1st Cir. 2019) (quoting United States v. Capozzi, 486 F.3d 711, 725-26 (1st Cir. 2007)). To meet this burden, the government can rely on "potential future effects." Id. (citation omitted). We have noted that when businesses purchase or sell goods manufactured in another state, such acts establish a sufficient interstate commerce nexus. See United States v. Rivera-Rivera, 555 F.3d 277, 286 (1st Cir. 2009) ("[W]e have held that a business is engaged in interstate commerce where the business purchased products from out-of-state."); United States v. Brennick, 405 F.3d 96, 100 (1st Cir. 2005) (concluding that there was sufficient effect on interstate commerce where "store manager testified at trial that if the stolen money had not been taken, it would have been reinvested in the purchase of goods manufactured outside the state of New Hampshire").

Given the evidence here, upholding the jury's finding that Boyrie-Laboy conspired to commit a robbery affecting interstate commerce does not result in a clear and gross injustice. The jury heard testimony that, by partaking in this conspiracy, Boyrie-Laboy set out to retrieve purportedly stolen goods that rightfully belonged to Wal-Mart and a department store as part of their sale inventory. He understood that the goods were manufactured outside of Puerto Rico and were brought to the island in shipping containers. The objective of the conspiracy was to keep the goods rather than returning them to their rightful owners so they could be sold, thereby depleting the stores of assets that would be used to engage in interstate commerce. See United States v. Turner, 501 F.3d 59, 70 (1st Cir. 2007) ("All that matters is that [defendant] entered a conspiracy whose objective was to steal the assets of an entity in interstate commerce." (quoting United States v. Nguyen, 246 F.3d 52, 54 (1st Cir. 2001))). Thus, the evidence demonstrates the necessary de minimis impact on interstate commerce, and affirming Boyrie-Laboy's conviction on this ground does not result in a clear and gross injustice.

Second, Boyrie-Laboy challenges the convictions under § 641, which makes it illegal to "steal[], purloin[], or knowingly convert[]" a "thing of value of the United States." He contends that the government did not establish that the stolen goods belonged to the United States government. However, the evidence

supportably shows that the FBI purchased the fireworks and electronics and advanced the cash that was taken from the two houses, and there was testimony that the funds used for those ends came from the FBI's central office. Thus, upholding the jury's finding that the property belonged to the United States does not result in a clear and gross injustice. Cf. United States v. Herrera-Martinez, 525 F.3d 60, 64-65 (1st Cir. 2008) (noting conversion of "government funds" falls under § 641).

Third, Boyrie-Laboy argues that the government did not establish that he had the requisite intent to support the convictions under §§ 1951, 371, and 641. He narrows his argument to two points: First, he maintains that he did not keep any stolen property or money. Second, he claims that he "had every reason to believe" that he was engaged in a legitimate police operation to retrieve stolen goods.

A conviction for conspiracy to violate the Hobbs Act requires "an intent to agree and an intent to commit the substantive offense." United States v. Valentini, 944 F.3d 343, 348-49 (1st Cir. 2019) (citation omitted). A conviction for conspiracy to defraud the United States under § 371 requires "both the intent to agree to commit a crime, and the intent that the crime be completed." United States v. Sostre-Cintrón, 911 F.3d 54, 57 (1st Cir. 2018) (citation omitted). A conviction under

- 11 -

§ 641 requires "the specific intent to steal a thing of value from the United States." Id. (citation omitted).

Boyrie-Laboy's argument that he did not keep stolen property or money is unavailing as what he did with the property does not negate his intent at the time of the crime. Furthermore, even if we accepted that the evidence showing that Boyrie-Laboy did not keep any stolen property or money served as circumstantial evidence that he lacked the requisite intent, that alone does not demonstrate that the jury's conclusion resulted in a clear and gross injustice. The evidence sufficiently supports a conclusion that Boyrie-Laboy had the requisite criminal intent to support the convictions and only declined to take his share of the stolen fireworks, electronics, and cash because he did not like the quality of the goods and was suspicious of the undercover agent. To his second argument, even if one could interpret the trial testimony as indicating that Boyrie-Laboy believed the operation was legal, we must view the evidence through the lens most favorable to the verdict. See United States v. Clough, 978 F.3d 810, 816 (1st Cir. 2020) ("We will not 'weigh the evidence or make credibility judgments; these tasks are solely within the jury's province.'" (citation omitted)). Considering the witnesses' testimony regarding Boyrie-Laboy's knowledge of and involvement in the conspiracy and theft, this court affirming the jury's finding

that he had the necessary intent to find him guilty of all six conspiracy charges does not result in a clear and gross injustice.

Fourth, and finally, Boyrie-Laboy argues that the evidence is insufficient because the quality of the prosecution's recordings was so poor that the recordings should not have been considered by the jury. However, he did not raise an objection to the admissibility of the recordings based on their quality in his motion in limine or during trial. Raising this argument for the first time on appeal presents yet another waiver because Boyrie-Laboy does not address the appropriate plain-error standard of review. See United States v. Rivera-Rodríguez, 75 F.4th 1, 28 (1st Cir. 2023). We hold that this argument is waived and thus do not consider it. See id.

## IV. Conclusion

For the reasons stated above, the convictions do not present a clear and gross injustice. Accordingly, we **affirm**.

- 13 -